Commonwealth of Pennsylvania Acting by Attorney General J. Shane Creamer, Plaintiff, *v.* Pennsylvania APSCO System, Inc. and Daniel Goldstein, Individually and as President of Pennsylvania APSCO System, Inc. and Mark Myers, Individually and as Treasurer of Pennsylvania APSCO System, Inc. and Kenneth L. Miskinis, Individually and as Vice President of Pennsylvania APSCO System, Inc., Defendants.

Argued June 5, 1973, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Manuel Grife,* with him *Gever & Grife,* for defendants.

*Jeffrey A. Ernico,* Deputy Attorney General, for plaintiff.

OPINION BY JUDGE WILKINSON, August 30, 1973:

This case is before us on preliminary objections to the Commonwealth's complaint alleging violations of the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P. L. 1224, 73 P.S. §201-1 et seq. The preliminary objections as filed cover

a request for a more specific pleading, striking off the complaint because it contains impertinent matter and a demurrer. The parties agreed to a stipulation of facts as to the organization and structure of the APSCO System. The use of the stipulation was expressly limited to the argument on these preliminary objections.

In the statement of questions involved, the briefs filed, and in oral argument, the parties have restricted themselves to arguing the demurrer and have neither briefed nor argued the questions of a more specific complaint or impertinent matter alleged. Accordingly, we will consider the preliminary objections with regard to specificity and impertinent matter as having been abandoned and will consider only the matter of the demurrer.

The first question raised is stated to be: "I. Is the Unfair Trade Practices and Consumer Protection Law so vague and indefinite as to violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution?" This question we must answer in the negative. In *Commonwealth v. Hush-Tone Industries, Inc.*, 4 Pa. Commonwealth Ct. 1,     A. 2d (1971), Judge ROGERS discusses the history of the Unfair Trade Practices and Consumer Protection Law. With appropriate citations of authority, the opinion explains and the decision of this Court held that the Act was enforceable and an injunction issued.

The second question raised is: "II. Does the Court have the authority to order restitution under the Unfair Trade Practices and Consumer Protection Law?" Again, we must answer this question in the negative. In *Hush-Tone*, as in this case, in addition to the request for an injunction which was granted, the Commonwealth requested restitution be ordered to Pennsylvania purchasers. Without deciding this Court did not

have authority to do so, the request was denied, and it was pointed out that individual purchasers had adequate remedies at their disposal. Here, after full argument, we are prepared to and do hold that this Act does not authorize restitution as a remedy.

The Act is very specific. In Section 4 of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-4, the Attorney General or a District Attorney is authorized to obtain an injunction, without bond, to restrain and prevent violations. In Section 8, 73 P.S. §201-8, civil penalties of up to $5,000 are provided for each violation of the injunction. The Act does not speak of restitution in particular nor does it use such general language as "such other remedies as the Court may direct." The question of this Court's authority to expand its orders to go beyond injunctive relief to gain what many might consider a desirable result was discussed at length by Judge BLATT in *Armstrong School District v. Armstrong Education Association*, 5 Pa. Commonwealth Ct. 387, 291 A. 2d 125 (1972). We there concluded, as we conclude here, that when the Legislature specifies that the relief is to grant an injunction, we are without authority to go beyond and grant other relief which might be considered to be equitable in nature.

The final question for disposition is whether the allegations contained in the complaint with regard to the alleged fraudulent representation by defendants that brokers do not need licenses as motor vehicle salesmen is subject to demurrer. This allegation is contained in paragraph 19, which we quote: "19. Defendants represent to their dealers and brokers and to prospective dealers and brokers that said individuals need not obtain a motor vehicle salesman's license and that said individuals will be able to sell automobiles to ultimate consumers in the Commonwealth of Pennsylva-

nia; when, in fact, the Pennsylvania State Board of Motor Vehicle Salesmen has categorized APSCO brokers as 'salesmen' under the Motor Vehicle Salesmen's License Act, Act of September 9, 1965, P. L. 499, 63 P.S. §801 et seq.; said brokers do not qualify as 'salesmen' within the provisions of said licensing act; and consequently said brokers are presently operating illegally in Pennsylvania since they do not have and cannot obtain vehicle salesmen licenses."

The stipulation of facts is not sufficiently clear as to the method of operation of the brokers to allow us to decide this question on demurrer. If a broker was engaged by a purchaser to find him a dealer that would sell him a particular car, it might be that in this case the broker is the agent of the purchaser, is not a salesman, and does not need a license. On the other hand, if in actual practice the broker merely purports to do this and is, in fact, "selling" the customer a car that the broker convinces the customer he should have, an entirely different result obtains.

The stipulation seems to support both positions. Paragraph 2 refers to the broker purchasing automobiles for his customer. Is the "customer" the customer of the dealer or is he the customer of the broker? Paragraph 5 refers to brokers purchasing services, whereas paragraph 7 stipulates that the broker "purports" to act as an agent for a purchasing customer. Paragraph 11 refers to the broker's "profit." In normal parlance, a broker makes a commission, a seller makes a profit.

The complaint and stipulation contain the names and addresses of brokers alleged to be operating in Pennsylvania without licenses. It would appear that a simple method is available for the Commonwealth to have determined the issue of the applicability of the Motor Vehicle Salesmen's License Act, Act of September 9, 1965, P. L. 499, 63 P.S. §801 et seq., i.e., prose-

cution under Section 12, 63 P.S. §812, for a misdemeanor, with a penalty of a fine not exceeding $100.00, or imprisonment for a period of not more than 90 days, or both.

While there will be circumstances under which this Court will have to render first impression interpretations of criminal statutes, nevertheless, since the Superior Court is the one charged by our Constitution with the primary appellate responsibility in criminal matters, it would seem prudent to have that Court give the statutory interpretation on a question of such fundamental importance in the application of this statute.

Accordingly, we enter the following:

### ORDER

Now, August 30, 1973, the preliminary objection based on the complaint's prayer for relief in the form of restitution is sustained. All other preliminary objections are dismissed, and the defendant is given 20 days to file an answer.