Commonwealth of Pennsylvania, by J. Shane Creamer, Attorney General, Plaintiff, *v.* Monumental Properties, Inc., Capital Housing Corporation, Executive House, Inc., Property Management, Inc., Samuel Elgart, Inc., Frank Stein, Albert Kaytes, Harry B. Davis, Donald Yost Real Estate Company, Miller Bros. & Company, William B. Hollinger & Son, Benjamin Volk, Marks & Company, Devon-Strafford Company, C. Pat Riley, Robert E. Plank, Griest Realty Company, Media Real Estate Company, Lori Incorporated, J. J. Gumburg Company, Washington Plaza, Inc., Penndale Towers, Inc., Saniel-Elkind Real Estate Co., Spiro Realty Company, Talenfeld Real Estate Co., John C. Clark Company, Yeo & Lukens Company, G. S. Rockey Company, and P. O. Naly Company, Defendants.

598

Argued May 8, 1973, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Mencer, Rogers and Blatt. Judge Wilkinson, Jr. did not participate.

*Lawrence Silver*, Deputy Attorney General, with him *David Kurtz*, Deputy Attorney General, and *Israel Packel*, Attorney General, for plaintiff.

*Patricia F. Kemp*, with her *Rod J. Pera*, and *Mc-Nees, Wallace & Nurick*, for defendants, Monumental Properties, Inc. and Property Management, Inc.

*Walter H. Compton,* for defendant, Capital Housing Corporation.

*Myron B. Markel,* for defendant, Saniel-Elkind Real Estate Co.

*Lee C. Swartz,* with him *Hepford, Zimmerman & Swartz,* for defendants, G. S. Rockey Company, Miller Bros. & Company and Donald Yost Real Estate Company.

*Patrick M. O'Donnell,* for defendant, Penndale Towers, Inc.

*Milton S. Lazaroff,* for defendant, Devon-Strafford Company.

*Joseph A. Klein,* for defendant, William B. Hollinger & Son.

*Robert G. Sable,* with him *John P. Klee,* and *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig,* for defendant, P. O. Naly Company.

*Irving L. Mazer,* with him *Oscar Spivack* and *Spivack & Dranoff,* for defendant, Yeo & Lukens Company.

*Samuel Lander,* for defendant, John C. Clark Company.

*Harry B. Yost,* with him *Hassel & Yost,* for defendants, C. Pat Riley and Robert E. Plank.

*John Havas,* with him *Charles B. Zwally* and *Shearer, Mette, Hoerner & Woodside,* for defendants, Executive House, Inc., C. Pat Riley and Robert E. Plank.

*Norman L. Haase,* with him *Fronefield, deFuria & Petrikin,* for defendant, Harry Davis.

*Samuel P. Kamin,* for defendant, Spiro Realty Company.

*G. W. Wilde,* for defendant, J. J. Gumburg Company.

*Andrew Flash,* with him *Herbert A. Fogel,* for defendant, Marks & Company.

*Arnold R. Lieberman,* for defendant, Albert J. Kaytes.

*Edward D. Marks,* for defendant, Washington Plaza, **Inc.**

*Thomas M. Kittredge,* for defendant, Media Real Estate Company.

OPINION BY JUDGE KRAMER, November 7, 1973:

This matter comes within the original jurisdiction of this Court and is before us on preliminary objections. The case was initiated by the Commonwealth of Pennsylvania, by its then Attorney General, J. Shane Creamer (hereinafter referred to as Commonwealth), under the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P. L. 1224, as amended, 73 P.S. §201-1 et seq. (hereinafter referred to as the Act), seeking to enjoin alleged violations of the Act. Twenty-five individuals and companies, alleged to be engaged in the business of leasing dwellings, including apartments, and four companies alleged to be engaged in the business of selling "legal forms," including "leases," are named as defendants.

We first observe that the allegations of the complaint are deceptively and unfairly general. In essence,

the Commonwealth treats all of the defendant land-lords as if they were but one defendant. By pleading what in reality are conclusions of law, the Common-wealth alleges that these defendants have violated the Act by utilizing "certain lease agreements which in whole and in part are unlawful, unconstitutional, unen-forceable, unconscionable, unfair, unclear, deceptive and misrepresent the respective rights and obligations of the parties to said agreements and constitute agree-ments of adhesion." The defendant form sellers are likewise lumped together and charged with violation of the Act in the alleged selling of the lease form agree-ments, which are characterized in the complaint with the same adjectives quoted immediately above in con-nection with the defendant landlords. There are no specific allegations of violation by any particular de-fendant.

Although Section 6 of the Act (73 P.S. §201-6) pro-vides an exclusive and effective means for the Attorney General to investigate, obtain information and discover facts *prior* to the bringing of a lawsuit under the Act, the Commonwealth filed, simultaneously with its com-plaint, a Motion for the Production of Documents. After the filing of objections and answers to the Motion by some of the defendants, a hearing was held before President Judge JAMES S. BOWMAN of this Court. The President Judge entered an Order on February 21, 1973, resolving the matter wherein the defendant landlords were ordered to submit to the Commonwealth unexe-cuted copies of each of its form of lease contracts. The point in mentioning this procedural matter is to high-light the fact that the Commonwealth, in its complaint, failed to comply with the Pennsylvania Rule of Civil Procedure No. 1019(h) by failing to attach to the com-plaint a copy of any lease, or any part thereof, or mak-ing an averment that such written material was not available to the Commonwealth. As the President

Judge noted in his Memorandum Opinion: "Which particular provision or provisions in which particular lease or leases of which particular defendant or defendants are alleged to be violative of any one or more of the paragraphs of plaintiff's complaint is unspecified."

The breadth and complexity of this case are revealed by the docket entries, which indicate that 16 of the 25 defendant landlords filed preliminary objections, five filed answers, two filed no responsive pleadings whatsoever, and two were not served. The Commonwealth, in turn, filed a Praecipe to Enter Default Judgment against only one of the unresponsive defendants. All four of the defendant form sellers filed preliminary objections. In total, 16 briefs were filed by defendants on the 20 sets of preliminary objections presently before us. We note at this time that the preliminary objections of the defendant landlords are on the same or similar grounds, and therefore, will be disposed of *infra,* under separate sections with appropriately entitled subheadings.

Initially, having perused the complicated pleadings in this case, one immediately queries the purpose behind the apparent random selection of the 25 defendant landlords (out of thousands in the Commonwealth) and the four defendant form sellers. That puzzle is answered in the Commonwealth's brief, wherein it is stated that:

"Plaintiff asserts a cause of action against the housing industry in the sale and use of form leases. In order to prove an adhesion contract, the court should look at industry practice. . . ." (p. 42).

". . . [T]his is a single cause of action against an industry-wide practice." (p. 43).

". . . [And plaintiff] seeks to correct abuses in the housing industry by establishing a fairness in the relationship between landlords and tenants. This action, against 25 major 'landlords' and 4 major 'form sellers,'

as representatives of that industry, seeks judicial intervention to correct the unconscionable use of contracts of adhesion, the form lease, which as used in Pennsylvania, overprotects any legitimate interests of landlords and strips tenants of common law, statutory and constitutional rights." (p. 2).

If there ever was a description of a sociologically desirable legislative program for the entire Commonwealth through the improper use of "judicial intervention," the aforesaid statement from the Commonwealth's brief sets it forth. Unless and until the General Assembly of Pennsylvania or some higher Court directs this Court, in effect, to establish social legislation (no matter how desirable it may be), this Court will condemn and refuse such "judicial intervention." Courts in this country are about the business of determining people's rights, based upon presented facts and applicable law. If the particular provisions of leases used in this Commonwealth (only generally referred to and certainly not set forth with any specificity by the Commonwealth in its complaint) are as onerous as alleged, then the proper method to test the legality of such leases is to bring a specific action, with respect to specific harm done to some specific citizen, against specific defendants on specific leases. If the Commonwealth desires a broad approach, the matter should be laid before the General Assembly. The Attorney General is clearly empowered to make such requests under the specific provisions of The Administrative Code of 1929, Act of April 9, 1929, P. L. 177, art. IX, §905, as amended, 71 P.S. §295, which states: "The Department of Justice shall have the power, and its duty shall be, to prepare, for submission to the General Assembly, from time to time, such revisions and codifications of the laws of this Commonwealth, or any part thereof, as may be deemed advisable."

Even if the leasing of property came within the provisions of the Act involved in this case (which will be discussed *infra*), the approach utilized by the Attorney General is improper. In reality, the Commonwealth is requesting this Court to determine for an entire industry that provisions of agreements which are onerous to the Attorney General, but which have not yet been declared illegal or unconstitutional per se, be declared illegal, null and void. The Commonwealth's approach in this case would be analogous to the Department of Environmental Resources bringing a lawsuit against 25 owners of buildings with smokestacks and four builders of smokestacks, seeking to enjoin them from emitting particulate matter from smokestacks in excess of that department's regulation, with the intent of enjoining all such smokestacks in the Commonwealth.

Turning to the merits of the matter before us, the Commonwealth's complaint basically alleges that the sale or use of a standard form lease agreement (most of which have been used in this Commonwealth for many years) constitutes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," as found in Section 3 of the Act (73 P.S. §201-3).

Paragraph 9 of the Commonwealth's complaint purports to set forth certain provisions in standard form leases which allegedly violate the Act. These general allegations are set forth verbatim, as follows:

"(a) lessor's 'right' to distrain for rent,

"(b) lessee's unconditional warrant of attorney,

"(c) lessor's unconditional 'right' to confess judgment,

"(d) lessee's unconditional waiver of unexplained rights, including statutory rights,

"(e) lessor's unlimited discretion to accellerate [sic] lessee's rent,

"(f) lessee's waiver of claim for lessor's negligence, for himself and for third parties,

"(g) lessor affidavit of default is conclusive evidence of default,

"(h) lessee's waiver to oppose 'amicable' action in ejectment,

"(i) lessee's waiver of demand, notice, right to appeal, to a stay and standing to open or strike judgments."

In Paragraph 10, the Commonwealth alleges that the defendants have utilized form leases which fail to inform the parties to the leases of their respective rights under The Landlord and Tenant Act of 1951, Act of April 6, 1951, P. L. 69, art. I, §101 et seq., as amended, 68 P.S. §250.101 et seq., and the tenant's right to recover security deposits under an amendment to The Landlord and Tenant Act. *See* 68 P.S. §250.512.

## COMMONWEALTH'S COMPLAINT FAILS TO SET FORTH A CAUSE OF ACTION

While frankly admitting that the Act does not specifically provide for leasing transactions within its definition of unfair trade practice, the Commonwealth contends that because Section 2(3) of the Act (73 P.S. §201-2[3])[1] defines "trade" and "commerce" as including the "sale" of "any property," and subsection 4 of Section 2 (73 P.S. §201-2[4] [xiii] states that "[e]ngaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding" constitutes an unfair or deceptive practice, that the de-

---

[1] Section 2(3) reads as follows: " 'Trade' and 'commerce' mean the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth."

fendants in this case are in violation of the Act. Our interpretation of a statute is guided by the Statutory Construction Act of 1972, Act of November 25, 1970, P. L. 707, §1903, as amended (1 Pa. S. §1903), which provides:

"(a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

"(b) General words shall be construed to take their meanings and be restricted by preceding particular words."

Section 1921 of the Statutory Construction Act of 1972 (1 Pa. S. §1921) states:

"(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

"(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

"(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

"(1) The occasion and necessity for the statute.

"(2) The circumstances under which it was enacted.

"(3) The mischief to be remedied.

"(4) The object to be attained.

"(5) The former law, if any, including other statutes upon the same or similar subjects.

"(6) The consequences of a particular interpretation.

"(7) The contemporaneous legislative history.

"(8) Legislative and administrative interpretations of such statute."

We are also guided by Section 1922(5) of the Statutory Construction Act of 1972 (1 Pa. S. §1922(5)) wherein it is stated in subsection (5): "That the General Assembly intends to favor the public interest as against any private interest." There is one more section of the Statutory Construction Act which is pertinent; i.e., Section 1928 (1 Pa. S. §1928), which states that provisions of a law which contain penal provisions are to be strictly construed. Section 1928 of the Statutory Construction Act is significant because the Act in question permits the Commonwealth to petition for civil penalties up to $5,000 (if an injunction is issued by this Court as a result of the present action); thus the Act contains a penal provision, and therefore must be strictly construed.

As noted above, the Commonwealth contends that by virtue of the statutory use of the word "sale" that the leasing of property comes within the purview of the Act. It is argued that the practical effect of leasing real estate is the sale of real estate for the period noted in the terms of the lease. The word "sale" is not defined in the Act. We can take note of the fact that the Legislature recognizes the difference between "sale" and "rent" by virtue of its use of those two terms in other Acts. For instance, in the Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, as amended, 43 P.S. §954, in Section 4(j) in defining the term "commercial housing," the Legislature distinguishes between the words "sale" and "rent." Furthermore, in Section 2-106 of the Uniform Commercial Code, Act of April 6, 1953, P. L. 3, §2-106, 12A P.S. §2-106, "[a] 'sale' consists in the passing of title from the seller to the buyer for a price . . . ." The Commonwealth also incidentally argues that even if leasing arrangements do not constitute sales, they still come with-

in the definition of "trade and commerce." We cannot agree. *Black's Law Dictionary* (Revised Fourth Edition 1968) defines these words, as follows:

"TRADE. The act or business of exchanging commodities by barter; or the business of buying and selling for money; traffic; barter. . . ." (p. 1665).

"COMMERCE. The exchange of goods, productions, or property of any kind. . . ." (p. 336).

"LEASE. Any agreement which gives rise to relationship of landlord and tenant. . . ." (p. 1035).

We believe it is significant that the Legislature, having indicated its complete understanding of the word "lease," omitted that term from any provision in the Act before us.

We find it of further significance that this Court, in *Commonwealth v. Hush-Tone Industries, Inc.*, 4 Pa. Commonwealth Ct. 1, 21 (1971), stated: "As its name explicitly states, the Pennsylvania Act is a consumer protection law designed to broaden the protections afforded *buyers* by existing state law." (Emphasis added.) Our Court there further stated:

". . . Section 2 of the Pennsylvania statute [73 P.S. §201-2] defines 'uniform methods of competition and unfair or deceptive acts or practices' identically as The Uniform [Deceptive Trade Practices] Act defines 'deceptive trade practices.' The Uniform Act's precursors were the Federal Trade Commission Act . . . and the Federal Lanham Trademark Act. . . .

". . . Hence the Pennsylvania statute is modeled on the Federal Trade Commission and Lanham Trademark Acts and we may look to the decisions under those Acts for guidance and interpretation." 4 Pa. Commonwealth Ct. at 20-21.

We have studied both of these Federal statutes and find no mention of the rental of real property. Furthermore, we have found no case wherein the leasing of property has been brought within the purview

of those Federal statutes. As we read the language of the Act, there is a reference to "unfair methods of competition" or "unfair or deceptive acts or practices" which indicates a legislative intent to proscribe types of conduct which would enable a person or company to gain a competitive edge unfairly over another in the sale of goods, property or services, or beguile a consumer into purchasing property or engaging in the proffered service by misrepresentation of the nature of the goods, property or services. We hold, therefore, that the leasing of real property was not intended by the Legislature to come within the purview of this Act. If the provisions in the leases are as onerous as the Commonwealth contends, then it would seem that these provisions would deter a customer or consumer or tenant from entering into such a contract, rather than mislead him into such an agreement by a misrepresentation of benefits to him.

In passing, we believe it is important to answer the Commonwealth's contention that the leasing agreements used throughout the State are "contracts of adhesion." Contracts of adhesion were discussed by our Supreme Court in the case of *Galligan v. Arovitch*, 421 Pa. 301, 304, 219 A. 2d 463, 465 (1966), where it said: "The result is that the tenant has no bargaining power and must accept his landlord's terms. There is no meeting of the minds, and the agreement is in effect a mere contract of adhesion, whereby the tenant simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely. It is obvious that analysis of the form lease in terms of traditional contract principles will not suffice, for those rules were developed for negotiated transactions, which embody the intention of both parties." There can be no question that under the law of this Commonwealth contracts of adhesion are violative of public policy and should be given no legal effect. It

is also quite clear, however, that the phrase "contracts of adhesion" cannot be attached a priori to every form lease, but rather contracts of adhesion can only be determined based upon appropriate facts concerning specific parties under specific circumstances. As our Supreme Court has noted, contracts containing clauses which could be declared to constitute contracts of adhesion will not be so declared under lease contracts between corporations with equal bargaining power. *Cf. Employers Liability Assurance Corp., Ltd. v. Greenville Business Men's Assoc.*, 423 Pa. 288, 224 A. 2d 620 (1966).

The Commonwealth argues that the form leases generally described are contracts of adhesion because "poor" persons who are prospective tenants must accept the terms of the landlord's form lease or obtain no housing whatsoever. While this Court abhors the use of form leases which are overly protective and unfairly drawn to the benefit of the landlord, before such a lease may be determined to be a contract of adhesion and therefore of no legal effect, specific facts pertaining to specific instances and specific tenants and landlords must be alleged and proven.

In summary, we reiterate our conclusion that leases do not come within the purview of the Act before us, and therefore now hold that a cause of action has not been set forth in the Commonwealth's complaint against the 25 landlords.

### ALLEGATIONS OF VIOLATION OF THE ACT

The Commonwealth argues that most or all of the prepared leases are on a "point type" of ten or less, which is so small in size that it is difficult for a citizen to read the lease. The Commonwealth urges that by use of print which is difficult to read, the landlord is violating the Act in fraudulently presenting to a pro-

spective tenant a document which the tenant will not read because of the type.[2]  If the Commonwealth desires to have a specific "point type" set as a standard for the printing of all leases, then it seems to us that this is a legislative matter for the General Assembly and not for this Court.  This Court could, *under proper facts,* declare a contract which was illegible to be illegal, but to declare all leases under all circumstances to be illegal because of the "point type" is not within the power of this Court.

The Commonwealth contends that paragraph 9, quoted above, of its complaint sets forth specific allegations of violations of the Act.  We have carefully researched each of these allegations and have determined that it is not possible to state that any or all of the clauses alluded to in the nine allegations have been or would be declared illegal or unconstitutional provisions of a lease under all circumstances in this Commonwealth.  We will set forth the results of our research with specific reference to those allegations quoted above.

Paragraph 9(a) Distraint.  The landlord's right to distrain for rent was upheld by our appellate courts in the case of *McAnniny v. Miller,* 19 Pa. Superior Ct. 406 (1902).  This case has not been overruled by any appellate court.  Admittedly, there are Federal lower court decisions which have held that under certain sets of circumstances, the right to distrain may be unconstitutional.  *See Gross v. Fox,* 349 F. Supp. 1164 (E.D.

---

[2] It is interesting to note that in the supplemental brief which the Commonwealth presented to this writer, an exhibit was attached of a Federal Department of Housing and Urban Development circular which is so poorly printed and so faintly reproduced that this writer was unable to read same, even with the use of a magnifying glass. If the Commonwealth's argument is true, then should this Court presume that the Commonwealth did not intend this Court to read the exhibit which is attached to its brief? We think not.

Pa. 1972) ; *Musselman v. Spies,* 343 F. Supp. 528 (M.D. Pa. 1972) ; *Sellers v. Contino,* 327 F. Supp. 230 (E.D. Pa. 1971) and *Santiago v. McElroy,* 319 F. Supp. 284 (E.D. Pa. 1970). As we read these Federal cases, however, we do not discern any firm holding that *all clauses* of distraint are unconstitutional.

Subparagraphs 9(b) and 9(c) of the complaint pertain to the unconditional warrant of attorney and right to confession of judgment. Here the Commonwealth relies upon *Swarb v. Lennox,* 314 F. Supp. 1091 (E.D. Pa. 1970), *aff'd,* 405 U.S. 191 (1972) where a confession of judgment clause was declared unconstitutional for a class of persons whose income did not exceed $10,000 per year.[3] We believe it is significant that on the same day the United States Supreme Court came down with its *Swarb* opinion, that Court also handed down *D. H. Overmyer Co., Inc. of Ohio v. Frick Co.,* 405 U.S. 174 (1972) which recognized confession of judgment as a proper and useful purpose in the commercial world, and that rulings on confession of judgment clauses would depend upon the facts of each particular case. Furthermore, our Superior Court in the case of *Egyptian Sands Real Estate, Inc. v. Polony,* 222 Pa. Superior Ct. 315, 294 A. 2d 799 (1972) clearly recognized *Overmyer* and *Swarb,* and stated that confession of judgment clauses are still valid in this Commonwealth under the right set of circumstances.

Paragraph 9(d) of the Commonwealth's complaint pertains to the unconditional waiver of statutory rights. Once again the United States Supreme Court, in *Over-*

---

[3] It should be noted that the Supreme Court limited its opinion to the appeal properly before it. In so doing, it held that the rules and statutes in question were not unconstitutional on their face. The Court also specifically declined to approve that portion of the lower court's opinion and judgment which were not appealed; viz., the unconstitutionality of judgments confessed against persons with incomes of less than $10,000 per year.

*myer, supra* held that rights may be waived in a contract. The law of this Commonwealth is that, under proper circumstances, such rights may be waived. *See West Penn Sand & Gravel Company v. Shippingport Sand Company,* 367 Pa. 218, 80 A. 2d 84 (1951).

Paragraph 9(e) of the Commonwealth's complaint refers to an unlimited discretion to accelerate lessee's rent. This provision has been permitted under the law of Pennsylvania. *See Gale Industries, Inc. v. Bristol Farmers Market & Auction Co.,* 431 Pa. 464, 246 A. 2d 391 (1968); *Peirce v. Hoffstot,* 211 Pa. Superior Ct. 380, 236 A. 2d 828 (1967); and *Drey St. M. Co. v. Nevling,* 106 Pa. Superior Ct. 42, 161 A. 880 (1932).

Paragraph 9(f) of the Commonwealth's complaint refers to the tenant's waiver of claim for lessor's negligence for himself and for third parties, sometimes known as exculpatory clauses. The current status of the law on exculpatory clauses in contracts seems to be unsettled. In *Galligan v. Arovitch,* 421 Pa. 301, 219 A. 2d 463 (1966), the question was raised whether or not an exculpatory clause in a lease constitutes a contract of adhesion and therefore is violative of a public policy, but the court did not answer the question it had raised. Later, in *Kotwasinski v. Rasner,* 436 Pa. 32, 258 A. 2d 865 (1969), the Court reaffirmed its position that such clauses will be strictly construed against a party drawing or presenting the instrument, but still did not answer the "contract of adhesion" question. *See also Manius v. Housing Authority of the City of Pittsburgh,* 350 Pa. 512, 39 A. 2d 614 (1944). In any event, there is no established law which declares exculpatory clauses illegal or unconstitutional per se.

Paragraph 9(g) of the Commonwealth's complaint referred to the landlord's affidavit of default as conclusive evidence of default. The Commonwealth, in its complaint, gives no reference to any provision in any lease or law to which this allegation is directed. Its

brief only mentions this allegation in a cursory way in connection with some deprivation of due process or an attempt to change "rules of court evidence." No further explanation is made and we have no idea to what principle of law the Commonwealth is alluding. If the Commonwealth is referring to a former procedure whereby the landlord filed an affidavit of default as part of his entry of a confession of judgment, then this is specious because on January 1, 1970, the Pennsylvania Rules of Civil Procedure (Pa. R. C. P. No. 2950 et seq.) changed this procedure.

Paragraph 9(h) of the Commonwealth's complaint referred to the tenant's waiver to oppose "amicable" action in ejectment. The right to enter an amicable action in ejectment still remains the law of Pennsylvania. The ruling case law is found in *Equipment Corp. of America v. Primos Vanadium Co.*, 285 Pa. 432, 132 A. 360 (1926). The Court, in that case, stated: "The practice has uniformly been, in those instances where a defendant had a defense to the judgment, for him to make application to the court below either to strike it off or to open it and let him in to a defense. This method of procedure is speedy and orderly, preserves the rights of the parties and gives the court such control over the judgment as to prevent injustice to defendants, as well as full opportunity to set aside unmeritorious defenses which are interposed and thus to safeguard plaintiffs in the assertion of their rights which cannot be legally countervailed." 285 Pa. at 437-438, 132 A. at 362. The Commonwealth seems to contend that in spite of this rule of law, such clauses are unconscionable because for poor people, who cannot obtain attorneys, such clauses constitute contracts of adhesion when contained in leases. Without questioning the availability of legal aid to the poor, this Commonwealth contention, nonetheless, must fail. As we have

previously stated in this opinion, contracts of adhesion must be proven on a case by case basis.

Paragraph 9(i) of the Commonwealth's complaint refers to the tenant's waiver of demand, notice, right to appeal, to a stay and standing to open or strike judgments. This language has been interpreted by our Supreme Court to apply only to the right to attack mere irregularities apparent of record in the entry of judgment. Our Supreme Court in *Grady v. Schiffer*, 384 Pa. 302, 307, 121 A. 2d 71, 73 (1956) stated: "While the lessee agreed in the lease that any judgment entered against him by virtue of the power of attorney contained in the lease should be final, and that he would not take an appeal therefrom, or file a motion or rule to strike off or open it, such a waiver of the right to appeal applies only to the right to attack mere irregularities apparent in the record and does not cure the defect of a lack of authority to confess the judgment. . . ."

Our purpose in researching and analyzing the law as it applies to the allegations before us is to determine whether the law is so well established that this Court could determine as a matter of law that the clauses generally described by the Commonwealth in its complaint[4] are in fact unlawful or unconstitutional. Our research permits us to conclude that only under certain given circumstances will some of these clauses be declared to be legally ineffective. It seems quite apparent that if a proper set of circumstances establishes a contract of adhesion, the courts have the power to declare such clauses in that case for that particular lease or leases null and void and of no legal effect. We cannot find sufficient support to declare any of the clauses

------

[4] The only specific references can be found in the Commonwealth's brief as it relates to *some* of the form leases used by some of the landlords and sold by the four sellers.

alleged to be violations by the Commonwealth illegal or unconstitutional per se. With reference to paragraph 10 of the complaint, we can find no law which would require a landlord to notify a tenant of his rights under The Landlord and Tenant Act. Once again, this is a matter for the General Assembly.

Our reading of the law permits us to hold that a cause of action has not been stated in the complaint by the Commonwealth against the landlords.

## MOTION FOR MORE SPECIFIC PLEADING

In paragraph 6 of the complaint, the Commonwealth charges both the defendant landlords and form sellers with fraud. Rule 1501 of the Pennsylvania Rules of Civil Procedure provides: "Except as otherwise provided in this chapter, the procedure in an action in equity shall be in accordance with the rules relating to the action in assumpsit." Pa. R. C. P. No. 1019(b) states: "Averments of fraud or mistake shall be averred with particularity." The general averments of fraud in the Commonwealth's complaint in no way set forth the basis of the charge of fraud.

Paragraphs 4, 6 and 8 of the Commonwealth's complaint contain no allegations of fact, but only conclusions of law. Pa. R. C. P. No. 1019(a) states: "The material facts on which a cause of action or defense is based shall be stated in a concise and summary form." From this complaint, it is impossible to determine which defendant has done what to whom with what kind of lease or which lease contains which paragraphs which the Commonwealth believes to be illegal or unconstitutional. This complaint makes it absolutely impossible for any of these defendants to prepare an answer. On this basis alone, the preliminary objections filed by many of the defendants for a more specific pleading would have to be sustained. We are at a loss

to explain why the Commonwealth did not see fit to amend its complaint after this Court ordered the landlords to submit copies of the form leases which they use. In any event, there is no need to make such a ruling because of our holding that the complaint fails to state a cause of action.

## The Form Sellers

Although we have held herein that the lease agreement between the landlord and tenant does not come within the purview of the Act before us, it is conceivable that the sale of lease forms by the lease form seller could under a proper set of allegations come within the purview of the Act. If, for instance, the Commonwealth's complaint had alleged that the form seller defendants were holding out the leases which they prepared and sold to be within the purview of all Pennsylvania Statutes and the Constitution whereas the form sellers knew or should have known that certain provisions in their leases were in fact illegal or unconstitutional, then it would be possible to bring the form sellers within the purview of the Act and support a complaint as a prelude to a hearing in this Court under the Act. As we have disclosed above, however, the allegations made in paragraphs 9 and 10 do not disclose any provisions in the alleged leases which, as a matter of law, can be held to be illegal or unconstitutional for all tenants and all landlords. There are not sufficient allegations of clear violation to support the complaint and it, therefore, must be dismissed.

In passing, although we give little credence to the argument of some that the art of drafting pleadings is disappearing from the practice of law, the above discussion addressed to the need for more specific pleadings is equally applicable with respect to the allegations against the form sellers.

### The Prayer of the Complaint

The prayer of the complaint requests this Court to far exceed the power granted to it by the General Assembly. Section 4 of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-4 authorizes this Court "to issue temporary or permanent injunctions to restrain and prevent violations of this act, and such injunctions shall be issued without bond." We are further authorized to order the payment of civil penalties for violation of such an injunction. *See* Section 8 of the Act (73 P.S. §201-8). In its prayer, the Commonwealth requests this Court not only to declare the alleged use and sale of form leases as illegal or unconstitutional violations, but also to order the landlords to offer new leases to its present tenants with renewals at the same rental, to give notice of the opinion of this Court to its tenants and to file with the Attorney General and this Court new lease form agreements for approval 60 days before they are utilized or sold. This Court has no such authority. *See Commonwealth of Pennsylvania v. Pennsylvania APSCO System, Inc.*, 10 Pa. Commonwealth Ct. 138, 309 A. 2d 184 (1973).

### Summary

Leasing agreements do not come within the purview of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq.; therefore, the Commonwealth's complaint has not set forth a cause of action against the defendant landlords. It is also of import to note that due to the fact that the Commonwealth's complaint is not self-sustaining, it would be improper to enter the default judgment sought by the Commonwealth against one of the two nonresponsive defendant landlords. *See Downes v. Hodin,* 377 Pa. 208, 104 A. 2d 495 (1954). Our holding with respect to the defendant

landlords, in essence, leads to the conclusion that this Court lacks jurisdiction over the subject matter and hence, the complaint against all 21 landlords will be dismissed.

With respect to the defendant form sellers, we have held that the Commonwealth's complaint does not present sufficient allegations of violations of the Act in question and must be dismissed.

We, therefore,

ORDER

AND Now, this 7th day of November, 1973, it is hereby ordered that the Commonwealth's Praecipe To Enter Default Judgment is dismissed; the defendants' preliminary objections are sustained, and the Commonwealth's Complaint is dismissed with respect to all defendants.