## V. J. Hajjar Associates, Inc. v. Medical Service Association of Pennsylvania

*George W. Gekas*, for plaintiffs.
*William H. Wood*, for defendants.

DOWLING, *J.*, June 30, 1980—We must not only decline to entertain equity jurisdiction in this case, but we must also bar plaintiffs from any judicial forum.

Involved is a dispute between participating doctors and Blue Shield. Plaintiffs have maintained a contractual relationship with Pennsylvania Blue Shield agreeing to perform dental services for PBS subscribers in accordance with the Regulations for Participating Doctors, the PBS By-Laws and the provisions of the Blue Shield Regulatory Act, 40 Pa.C.S.A. §§6301-6334.

Payments are made directly to participating doctors by PBS for services rendered to PBS subscrib-

ers. The rate of payment for professional services rendered by participating doctors is computed on a "prevailing fee" basis. Essentially, the prevailing fee system provides for payment to the participating doctor of his "usual" fee, which is defined as the fee which the doctor most frequently charges to his patients for the procedure performed. There is, however, an upper limit to the usual fee any doctor may charge which is computed with reference to the "customary" fees charged by doctors in the same geographical area for the same services.

Under the prevailing fee system, PBS maintains a "prevailing fee profile" for each participating doctor, and pays each doctor in accordance with his particular profile for services rendered to PBS subscribers. These profiles are revised periodically to reflect increases in each doctor's "usual" fees and the "customary" fees charged by doctors in each geographical area.

Under the Regulations for Participating Doctors, PBS reserves the right to review a doctor's billing records to confirm that the doctor's usual fees as reported to PBS are, in fact, the fees which he normally charges to the majority of his patients to insure that doctors are not routinely charging a higher fee for services rendered to PBS subscribers than they charge their uninsured patients for similar services.

In July of 1978 PBS personnel conducted an audit of plaintiffs' records and concluded that they had been billing services to PBS subscribers at a higher rate than were billed to uninsured patients. As a result, PBS reduced plaintiffs' prevailing fee profile and demanded a refund of the amount it determined had been overcharged, namely $32,052. Plaintiffs disputed PBS' findings and requested

consideration of the matter by the Dental Review Committee as provided by the PBS By-Laws. The committee, after affording plaintiffs opportunity for several hearings, affirmed the initial decision. To enforce recovery of the alleged overpayment, defendant has been withholding payments to plaintiffs on account of covered services.

Plaintiffs have commenced this action in equity seeking to enjoin defendant from asserting its claim, from withholding future payments in reduction of the overcharge, and from reducing plaintiffs' fee schedule.

Defendants have responded by filing preliminary objections asserting, statutorily and contractually, that plaintiffs are bound by the determination of the Dental Review Committee, and, if not, that there is an adequate remedy at law.*

Plaintiffs' relationship with PBS is governed by and subject to the provisions of 40 Pa.C.S.A. §6301 et seq., hereinafter The Regulatory Act. This act provides in section 6324(c): "All matters, disputes, or controversies relating to the professional health services rendered by the health service doctors . . . shall be considered and determined only by health service doctors as selected in a manner prescribed in the bylaws of the professional health service corporation."

The bylaws of the Association provide in Article X for the establishment of a Dental Review Committee and the procedure for submission of disputes to

---

*A third reason advanced in the preliminary objections by way of a motion to strike impertinent matter pertained to allegations in the complaint that certain policies and practices at PBS were detrimental to the interests of all dentists. Plaintiffs state in their brief that they are not opposing this motion; hence, this issue will not be discussed.

that committee. Under section 7 in enumerating what matters are included and what authority the committee has, there is specifically included the right to request the doctor involved to make an appropriate refund and to enforce this by withholding future payments. Furthermore, the Regulations for Participating Doctors specify that "all matters, disputes or controversies relating to the services performed by the participating doctors . . . shall be considered acted upon, disposed of and determined only by doctors in the manner provided by the By-Laws of PBS." Included in the Regulations is the requirement that when requested, doctors must substantiate to PBS' satisfaction that the usual charge of record at PBS is the frequent charge made to all patients and that if a review of a doctor's records indicates any violation of this, PBS may use this information in its determination of the usual charge.

Plaintiffs take exception to the audit asserting that it involved a nonrepresentative percentage of their uninsured patients and that an improper standard was used. It is their position that these issues are extraneous to the relationship between PBS and the participating dentists.

However, the bylaws and regulations speak specifically to the matter involved and these contractual agreements along with the statutory requirements impose an exclusive remedy for settling these disputes. Where such a remedy is provided by statute, it must be pursued exclusively and equitable relief is not available: Perry Const., Inc. v. Palmyra Borough Authority, 37 Pa. Commonwealth Ct. 126, 389 A. 2d 255 (1978); Tornetta v. Plymouth Township Municipal Authority, 31 Pa. Commonwealth Ct. 353, 375 A. 2d 1381 (1977). This rule has

also been adopted by statute in Pennsylvania and is now codified at 1 Pa.C.S.A. §1504, which provides:

"In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect."

By entering into such agreement with Blue Shield, plaintiffs are bound by the Blue Shield bylaws and the Rules and Regulations for Participating Doctors. In addition to those provisions which provide for reporting, compensation and performance of services referred to in the agreement, plaintiffs are bound by those portions of the bylaws which provide for the resolution of disputes: Elliott v. Lindquist, 356 Pa. 385, 52 A. 2d 180 (1947) (stockholders are bound by bylaws); Brown v. Lehman, 141 Pa. Superior Ct. 467, 15 A. 2d 513 (1940) (the constitution and bylaws of a voluntary association are binding upon its members); and Berberian v. Lancaster Osteopathic Hosptial Association, Inc., 395 Pa. 257, 149 A. 2d 456 (1959) (doctor and hospital association are contractually bound to follow procedure for resolution of disputes stated in bylaws).

In Gordon v. Tomei, 144 Pa. Superior Ct. 449, 460, 19 A. 2d 588 (1941), the court emphasized the binding effect on members of an association and on the association itself of the procedure for resolution of disputes set out in the bylaws. The court stated:

"It is essential that the legal position of members of an association in relation to intra-organization tribunals be clearly recognized. The by-laws being

a contract among the members, quasi judicial bodies, as well as the administrative officers of the association, are the agents of the entire membership, under authority designated by and restricted in the contract of membership, to wit, the by-laws."

To circumvent the exclusive procedure, which is both provided for by statute and agreed to by plaintiffs, they must demonstrate, at a minimum, that the procedure is either constitutionally improper or fundamentally inadequate: Borough of Green Tree v. Board of Property Assessments, 459 Pa. 268, 328 A. 2d 819 (1974); Rochester & Pittsburgh Coal Co. v. Indiana Co. Board of Assessment, 438 Pa. 506, 266 A. 2d 78 (1970). Plaintiffs have not even alleged that the proceedings of the Dental Review Committee are in any way unconstitutional.

Although plaintiffs aver in a general way that the decision of the Dental Review Committee was erroneous, they do not allege that the committee was biased or that its deliberations were tainted by fraud or any other fundamental unfairness.

Plaintiffs also raise the very interesting point that the "Participating Doctor's Agreement with Pennsylvania Blue Shield" with its inclusion of the Regulatory Act and By-Laws constitutes an adhesion contract. The term "contract of adhesion" was first used in French legal analysis in 1901. (Salleilles, De La Declaration de Volonte 220). It was introduced into Anglo-American jurisprudence by Edwin W. Patterson in 1919 (Patterson, The Delivery of a Life-Insurance Policy, 33 Harv. L. Rev. 198, 222), and since has become common in legal writing. It is gradually finding its way into judicial opinions and is defined as follows in 17 C.J.S. Contracts §10: "Contract of adhesion signifies a standardized contract, which, imposed and drafted by the party

of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."

A somewhat more expanded reference is found in Steven v. Fidelity and Casualty Co. of New York, 58 Cal. 2d 862, 882, 27 Cal. Rptr. 172, 185, 377 P. 2d 284, 297 (Ca. 1963):

"The term [contract of adhesion] refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a 'take it or leave it' basis, without opportunity for bargaining and under such conditions that the 'adherer' cannot obtain the desired product or service save by acquiescing in the form agreement."

In an exhaustive analysis of such contracts the New Jersey Supreme Court in the case of Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 403, 161 A. 2d 69, 94 (1960), held void as against public policy an exculpatory provision of an express warranty that excluded claims against a dealer or manufacturer for personal injuries resulting from a defective car. The court stated the rationale of its ruling in these words:

"The task of the judiciary is to administer the spirit as well as the letter of the law. On issues such as the present one, part of that burden is to protect the ordinary man against the loss of important rights through what, in effect, is the unilateral act of the manufacturer. . . . From the standpoint of the purchaser, there can be no arms length negotiating on the subject. Because his capacity for

bargaining is so grossly unequal, the inexorable conclusion which follows is that he is not permitted to bargain at all. . . ."

The concept is no stranger to the decisional law of Pennsylvania, although most of the reported decisions in discussing the term use it in connection with insurance contracts or exculpatory clauses in landlord/tenant agreements. See Galligan v. Arovitch, 421 Pa. 301, 219 A. 2d 463 (1966); East Coast Equipment Company v. Maryland Casualty Company, 207 Pa. Superior Ct. 383, 218 A. 2d 91 (1966); and Com. v. Monumental Properties, Inc., 10 Pa. Commonwealth Ct. 596, 314 A. 2d 333 (1973). Particularly discerning is a lower court explanation in Fontana v. Miller, 116 Pitts.L.J. 422, 424 (1968), where the court found such agreements to be where one of the parties in order to gain a benefit he desires, agrees to "adhere" to the other provisions therein *which may be unfair to him.*

A famous discussion of this principle is Judge Frank's dissent in Siegelman v. Cunard White Star, 221 F. 2d 189, 205 (2d Cir. 1955), involving party choice of law in a steamship ticket wherein he states: "An ordinary contract has been called a sort of private statute, mutually made by the parties and governing their relations. But in a take-it-or-leave-it contract, absent actual freedom to contract, the parties do not 'legislate' by mutual agreement; the dominant party 'legislates' for both."

While the effect in some states of an adhesion contract is strictly to construe it against the party preparing it, Pennsylvania takes the extreme position that contracts of adhesion are violative of public policy and should be given no legal effect: Com. v. Monumental Properties, Inc., supra.

It must therefore be borne in mind that to label a contract one of adhesion is to place a limitation on freedom of contract. While this may be highly desirable in certain limited cases, such departure should only be invoked when it is clear that the essential elements of an unconscionable provision are present.

Expressly running through all of the cases is a strong emphasis on disparity of bargaining power; and equally involved upon a closer examination of the factual situations are the critical circumstances that the provision under attack is inherently unfair to the so-called weaker contracting party. Insureds, tenants and consumers, to secure what in many cases is almost a necessity, must accept contract provisions detrimental to their interests and of considerable benefit to the superior bargaining power.

The contract before us simply does not fit this pattern. No case has been called to our attention nor have we been able to find any involving contractual relationships between professional service providers and insurance associations of the type here involved. It is certainly debatable whether in fact Blue Shield is in a grossly superior bargaining position. Many dentists are not participating members and there is nothing to indicate that any particular economic hardship would result from not participating. Perhaps most importantly, the provision under attack, i.e., compulsory arbitration of disputes within the association, does not suggest any inherent unfairness to plaintiffs.

It may seem superfluous to decide defendants' contention that there is an adequate remedy at law since the above discussion obviously proscribes not

only equity jurisdiction but any access to the courts. However, the possibility or more accurately the probability of appellate review requires that we should also declare that, in any event, equity jurisdiction is barred.

Plaintiffs' complaint essentially alleges that PBS has improperly determined its entitlement to a refund in the amount of $32,052 from moneys paid to plaintiffs, and, to satisfy such entitlement has withheld moneys which otherwise would be payable to plaintiffs. Defendants' withholding such funds from plaintiffs results from plaintiffs' contractual relation to defendants as participationg doctors. Defendants could not so withhold moneys from plaintiffs if they were not participating doctors. Further, plaintiffs allege that PBS has submitted the question of its right to a refund to the Dental Review Committee, as provided by the agreement. Thus, plaintiffs' action is essentially contractual and concerns the rights of plaintiffs and defendants to a specific sum of money: $32,052. Plaintiffs have alleged no harm other than monetary damage as a result of defendants' conduct.

In Barco, Inc. v. Steel Crest Homes, Inc., 420 Pa. 553, 218 A. 2d 221 (1966), the Supreme Court of Pennsylvania vacated a decree entered by the lower court recertifying that action to the equity side of that court subsequent to its initial order certifying the case to the law side. Holding that the lower court's initial decision was correct, the Supreme Court stated at page 558 that: "Where an adequate remedy at law exists in the form of an action of assumpsit, equity has no jurisdiction." In addition, the Supreme Court at page 556 set forth at length the lower court's opinion wherein it justified its initial decision to certify the action to the law side. In said opinion, the lower court stated that

should it find that defendant therein breached its contract with plaintiff, an injunction would not be necessary.

" 'Moreover, we do not believe that an injunction is necessary to prevent any further breaches of this contract. If it is determined in an action at law that defendant's past conduct did constitute a breach, the defendant is hardly going to continue in this conduct and render itself liable for additional damages. Even if there may be a possiblilty that defendant may again breach the contract, this is not sufficient to invoke the jurisdiction of a court of equity.' "

Accordingly, we enter the following

## ORDER

And now, June 30, 1980, plaintiffs' complaint is dismissed.

Morgan, *J.*, did not participate in the consideration or decision of this case.