Manius et vir, Appellants, *v.* Housing Authority of the City of Pittsburgh.

Argued September 28, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Marvin D. Power,* with him *Margiotti, Pugliese & Casey,* for appellants.

*J. Roy Dickie,* with him *H. A. Robinson* and *Dickie, Robinson & McCamey,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, October 31, 1944:

This is an action in trespass by Edyth Manius and John F. Manius, her husband, appellants, against their landlord, the Housing Authority of the City of Pittsburgh, appellee, to recover damages for injuries sustained by the wife appellant, when a gas stove at which she was working exploded. The court below refused to take off a compulsory non-suit for the sole reason that their lease contained a full discharge of appellee's liability for the alleged negligence. This appeal followed.

On January 14, 1942, The Housing Authority of the City of Pittsburgh, appellee, executed a lease for premises situate at the Glen-Hazel Heights Development to Edyth Manius and John F. Manius, appellants. Clause (B)6 of the lease provided: "The Tenant agrees . . . To release the Authority, its representatives, agents, servants, and employees (including the management) from liability for any injury to the Tenant or the members

of his household, resulting from any cause whatsoever, excepting only such injury or damage resulting from the wilfull acts of such representatives, agents, and employees (including the management.)" On August 21, 1943, the wife appellant was injured by an explosion while canning in the oven of the gas stove in the kitchen. Prior thereto she had noticed that gas was leaking from the oven of said stove and had requested appellee to repair the same. No repairs were ever made. At the conclusion of appellants' case the trial judge granted the motion of The Housing Authority for a compulsory non-suit, which non-suit the court below refused to take off.

Appellants contend that the terms of the lease constituted an agreement to release in the future, or, in the alternative, if the agreement be construed as a present release in discharge of all liability for negligence, such agreement is void as being in contravention of the public policy of this Commonwealth. With these contentions we cannot agree.

The intention of the contracting parties with regard to Clause (B) 6 of the lease is clear. The words used are unambiguous. To assume that the parties expressed any possible indication that execution of a later writing, in event of some injury, was contemplated is to delve into the realm of supposition and hypothesis. There is no evidence which would support such a construction, if construction of the lease were needed. Appellants' covenant for the release of liability for damage arising from negligence on the part of their landlord was a part of the consideration for the lease itself. It is a writing under seal, supported by consideration, which "in terms promises that a future right shall be released or discharged but contemplates no execution of a later writing or other action by the party purporting to promise, the intent being that the right when it arises shall be immediately discharged . . ." See Restatement, Con-

tracts, Section 402, comment b. This writing operates as a release in discharge of negligence of the lessor.

Appellants urge, however, that assuming the covenant to be in discharge of negligence, such covenant is void as against public policy. It is argued that this is not a contract between private persons, relating strictly to their private affairs, but one to which the government is a party. Reliance is placed upon that line of cases prohibiting common carriers from contracting to relieve themselves from the responsibility for their negligence. See *Stoneboro & C. L. I. Co. v. L. S. & M. S. Rwy. Co.*, 238 Pa. 289, 294. Cf. *Brush v. Lehigh Valley Coal Co.*, 290 Pa. 322. The analogy is not a proper one. Consideration of public policy would seem to be a weighty factor in permitting the Authority to contract for non-liability. When the purpose for which the Authority was created and the probable effect a rule of law similar to that applied to common carriers would have upon it are considered, it is readily apparent that this Court will not, by judicial fiat, impose a restriction upon the contracting power of appellee.

Judgment affirmed.