Bureau for Child Care, Appellant, *v.* The United Fund of the Philadelphia Area.

Argued January 5, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Samuel Dashiell,* for appellant.

*Benjamin M. Quigg, Jr.,* with him *E. Barclay Cale, Jr.,* and *Morgan, Lewis & Bockius,* for appellee.

OPINION BY MR. JUSTICE JONES, March 16, 1965:

On June 1, 1959, the United Fund of the Philadelphia Area (United Fund), and the Bureau for Child Care (Bureau), both nonprofit corporations, entered into a written agreement entitled a "Participating Agency Agreement". In pertinent part, this agreement provided: (1) the term of the agreement was to be from June 1, 1959 to May 31, 1960, and thereafter from year to year unless terminated by either party on fifteen days' written notice to the other party on or before May 15th; (2) between September 1, 1959 and December 30, 1959, and at like periods in subsequent years, United Fund was required to conduct fund raising campaigns, from the proceeds of which the Bureau would receive an allocated share of the funds raised; (3) the Bureau would not conduct any separate fund raising campaigns, solicitations or similar activities during the term of the agreement except with the United Fund's sanction; (4) on or before April 1 of each year—beginning April 1, 1960,—the allocations committee of the United Fund would determine the net basic allocation for the Bureau for the following United Fund allocation year; (5) while the United Fund was not to be given any control, supervision or responsibility for the operations or program of the Bureau, it was recognized that United Fund would have "the right and obligation in determining allocations to give due consideration to demonstrated community needs, appropriateness of support, agency standards and effectiveness and similar criteria"; (6) in the event of termination of the agreement, the Bureau, notwithstanding such termination, would "be entitled to receive . . . its allocation from the preceding campaign . . . ." However, the United Fund reserved the right "at any time to cancel or defer payments to [the Bureau] in the event [the Bureau] fails to comply with the provisions of this agreement.";

(7) that the Bureau's services would be open and available to all persons in need of such services and that, during the term of the agreement, such services would be so maintained to the extent of available funds and facilities; (8) the Bureau agreed to "maintain responsible management, [to] establish and maintain sound financial practices, and [to] provide such financial and service data as may reasonably be required by United Fund from time to time . . . ."

Upon execution of this agreement, the Bureau received regularly from the United Fund a monthly allocation of $11,017 until May 31, 1963. On April 30, 1963, the United Fund, in accordance with the agreement, notified the Bureau of the termination of the agreement as of May 31, 1963. However, between May 31, 1963 and October 24, 1963 the United Fund continued to pay the Bureau six monthly payments of $11,-017 each and then refused to make any further payments.

The Bureau by complaint instituted suit in assumpsit against the United Fund in the Court of Common Pleas of Philadelphia County for $66,102, representing six payments which were allegedly due to the Bureau from the United Fund for the months of December 1963 to May 1964, inclusive. To the Bureau's complaint, the United Fund filed an answer containing new matter and, thereafter, the Bureau filed a motion for judgment on the pleadings. The Bureau's motion for judgment on the pleadings was dismissed by Judge GLEESON and the Bureau was granted leave to file an amended complaint or a reply to new matter within thirty days. The Bureau filed neither an amended complaint nor a reply to new matter. Thereafter, the United Fund renewed its previous undetermined motion for judgment on the pleadings and the court, acting through Judge McCLANAGHAN, granted this mo-

tion. From the judgment thus entered the Bureau has taken this appeal.

The Bureau has three contentions: (a) that, since one judge of the court of common pleas had denied United Fund's motion for judgment on the pleadings, thereafter another judge of the same court could not grant a motion for judgment on the same pleadings; (b) that the allegation in the United Fund's new matter of the *delivery* to the Bureau of a letter and resolution, both attached as exhibits to the new matter, wherein the United Fund notified the Bureau that it was terminating the written agreement, did not impose upon the Bureau the duty to deny the statements contained in either the letter or resolution; (c) that, under Paragraph 6 of the agreement between the Bureau and United Fund, the Bureau was entitled to receive *all* of its allocation from the preceding fund raising campaign even though the agreement had been terminated.

The docket entries indicate that, after the United Fund had filed its answer and new matter, the Bureau on January 16, 1964, before Judge GLEESON, moved for judgment on the pleadings. The docket entries do not reveal any motion for judgment on the pleadings filed by the United Fund at or about that time although it is conceded that, at the time of argument of the Bureau's motion for judgment on the pleadings before Judge GLEESON, the United Fund did orally move for judgment on the pleadings. The record is clear that the Bureau's motion for judgment on the pleadings was dismissed by Judge GLEESON and that United Fund's oral motion for judgment on the pleadings was not passed upon. The Bureau was granted thirty days within which to file either an amended complaint or a reply to new matter and the Bureau elected to file neither. Thereupon, the United Fund filed, on April 3, 1964, its motion for judgment on the pleadings

which was granted by Judge McClanaghan. Under these circumstances, nothing which took place before Judge Gleeson barred either the filing or the disposition of the United Fund's motion for judgment on the pleadings. This contention of the Bureau is without merit.

The United Fund takes the position that, in the three paragraphs comprising the new matter, it averred facts which constituted a complete defense to the Bureau's claim and, by failure to deny such facts, the Bureau has admitted such facts and, therefore, on the face of the pleadings, the United Fund was entitled to judgment on the pleadings. Determination of the correctness of the United Fund's position requires an examination of the pleadings under new matter. Paragraph 9[1] states that, by a letter dated April 30, 1963, the United Fund notified the Bureau that the 1959 agreement was to be terminated as of May 31, 1963, and enclosed with that letter was a copy of the resolution of United Fund's executive committee authorizing such notification. Incorporated by reference in Paragraph 9 were copies of both the letter and resolution. Assuming, arguendo, the contents of both letter and resolution were thus made part of the averments of Paragraph 9, what did such contents show? The letter states, insofar as pertinent: (a) the United Fund executive committee passed the enabling resolution to terminate the agreement because of "the inability of the United Fund and the [Bureau] to reach an understanding regarding the future operation of the [Bureau] as outlined" in a prior letter, the contents of which are not disclosed; (b) that the United Fund would be willing to reconsider its action "if the Bureau can demonstrate its ability to develop accepta-

---

[1] New matter contained three paragraphs numbered 9, 10 and 11.

ble minimum standards of care" and would seek re-admission to the United Fund. The resolution, after reciting that the Bureau had "failed to meet acceptable minimum standards over a period of years" as revealed by *undisclosed* findings of certain departments and councils, and the United Fund's obligation to the children in the community and fund contributors, authorized sending the notice of termination of the 1959 agreement and the establishment of a reserve fund—consisting of the unexpended amount previously allocated to the Bureau—to be expended, as the United Fund would determine, either to the Bureau or other child care agencies.

Paragraph 10 avers simply delivery of the letter and resolution to the Bureau and the acknowledgement by the Bureau of such delivery. Paragraph 11 avers voluntary (i.e., not pursuant to the 1959 agreement), payments to the Bureau of $66,102 subsequent to termination of the agreement.

The court below took the position that the United Fund was justified in terminating the agreement and cancelling monthly payments after October 24, 1963. That may well be so but the United Fund has not properly or adequately averred such justification by way of defense. It is axiomatic that new matter must state facts, not conclusions.

It is clear from the record that continuance of payments by the United Fund to the Bureau under the 1959 agreement was contingent upon the Bureau's compliance with all the provisions of the agreement. If the Bureau failed to meet acceptable minimum standards or maintain responsible management or establish and maintain sound financial practices or meet any other requirement of the agreement, then the United Fund had the right to terminate the agreement and/or cancel future payments to the Bureau. The difficulty is that the United Fund has failed in its new matter

to aver concisely and in *factual* manner wherein the Bureau has violated or failed to comply with the agreement. What the United Fund in this respect has averred under new matter are simply conclusions without the factual basis supporting such conclusions. A judgment on the pleadings should be entered only in clear cases (*Lehner v. Montgomery,* 180 Pa. Superior Ct. 493, 119 A. 2d 626) and the instant situation does not fall within such category.

Lastly, the Bureau contends that, despite the termination of the 1959 agreement, it was entitled under the fifth section of Paragraph 6 of the 1959 agreement to continue to receive its allocation from the preceding fund raising campaign. The Bureau overlooks the fact that the same section of Paragraph 6 reserves to the United Fund the right "at any time to cancel or defer payments to [the Bureau] in the event [the Bureau] fails to comply with the provisions of this agreement." If the Bureau's services were not open and available to all persons in need of such services, or if such services were not so maintained to the extent of its available funds and facilities (Paragraph 10) or if the Bureau did not maintain responsible management, did not establish and maintain sound financial practices, or did not provide such financial service data as may from time to time be required by United Fund (Paragraph 11) or if in any other manner the Bureau violated and did not comply with the terms of the agreement, then the United Fund had the right to cancel monthly payments to the Bureau after the date of the termination of the agreement even though such monthly payments would be paid from the proceeds of the preceding fund raising campaign. The present difficulty is that in its new matter the United Fund did not spell out wherein the Bureau had failed to comply with the provisions of this agreement and its justifica-

tion for cancellation of the monthly allocation payments subsequent to the termination of the agreement.

Judgment reversed and the matter remanded to the court below so that the United Fund may amend its answer and new matter, if it can, to set forth in concise and *factual* manner its justification for termination of the agreement and for cancellation of the monthly allocation payments subsequent to the date of termination.[2]

Mr. Chief Justice BELL and Mr. Justice ROBERTS would affirm the court below.

---

[2] If the Bureau does not reply to such new matter or if its reply does not deny the averments of the new matter, the United Fund may then file a motion for judgment on the pleadings. Likewise, the Bureau's right to file a motion for judgment after the pleadings are closed is preserved.