381 A.2d 164

**Franklin W. LEIDY and Elizabeth S. Leidy, Appellants,**

**v.**

**DESERET ENTERPRISES, INC., d/b/a Body Shop Health Spa, Defendant,**

**and**

**Kathy Ann Robinson and Elizabeth S. Leidy, Additional Defendants.**

**Appeal of Kathy Ann ROBINSON.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1976.

Decided Dec. 2, 1977.

164

James P. Coho, Lancaster, for appellants at No. 2217, and appellees at No. 2282.

Andrew F. Lucarelli, Lancaster, with him John S. May, Lancaster, for appellant at No. 2282, and additional defendant, Robinson, at No. 2217.

Before WATKINS, President Judge and JACOBS, HOFF-
MAN, CERCONE, PRICE, VAN der VOORT and SPAETH,
JJ.

SPAETH, Judge:

Mr. and Mrs. Leidy, appellants, commenced an action in
trespass and assumpsit against appellee, Deseret Enterpris-
es, Inc., d/b/a Body Shop Health Spa, for injuries sustained
by Mrs. Leidy at the Spa. The Spa joined its employee,
Kathy Ann Robinson, as an additional defendant on the
theory that she acted outside the scope of her employment in
her treatment of Mrs. Leidy. (The Spa also joined Mrs.
Leidy as an additional defendant on the basis of assumption
of the risk, but this joinder has been stricken.)

The complaint alleges that Mrs. Leidy had been
referred to the Spa by her doctor as part of post-operative
treatment following surgery on the lumbar area of her
spine, but that the treatment she was in fact given was
directly contrary to her doctor's instructions to the Spa, and
resulted in various injuries. The Spa and Ms. Robinson filed
motions for judgment on the pleadings on the basis of a
provision in the membership agreement, between Mrs. Leidy
and the Spa, purporting to release the Spa from liability for
injuries resulting from its negligence or that of its employ-
ees. The Spa's motion was granted, but Ms. Robinson's
motion was denied. This consolidated appeal by the Leidys
and Ms. Robinson followed.

Neither motion should have been granted; we therefore
sustain the Leidys' appeal and remand for further proceed-
ings.[1]

1. In addition to contending that the exculpatory clause was invalid—
which contention will be considered below—the Leidys contend that
the Spa's motion should not have been granted because it was not
timely filed under Pa.R.Civ.P. 1034(a). This contention is without
merit. Rule 1034(a) provides that the motion may be filed "[a]fter
the pleadings are closed, but within such time as not to delay the
trial." Here only one trial term passed as a result of the court's
consideration of the motion. "[A] lower court will not be reversed
either for waiving or refusing to waive non-compliance with the
procedural rules in the absence of a showing of an abuse of discre-

## I

The Leidys contend that the clause purporting to release the Spa from liability for injuries resulting from its negligence is unconscionable.[2]

In *Crew v. Bradstreet*, 134 Pa. 161, 169, 19 A. 500 (1890), the Supreme Court stated:

Contracts against liability for negligence are not favored by the law. In some instances, such as common carriers, they are prohibited as against public policy. In all cases, such contracts should be construed strictly, with every intendment against the party seeking their protection.

■ Although not favored, contracts against liability may nevertheless be valid. *Commonwealth v. Monumental Properties, Inc.*, 10 Pa.Cmwlth. 596, 314 A.2d 333 (1973). Generally stated the contract will be held valid if:

(a) "it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or State . . . ." (*Dilks v. Flohr Chevrolet*, 411 Pa. 425, 434, 192 A.2d 682, 687 (1963) and authorities therein cited); (b) "the contract is between persons relating entirely to their own private affairs" (*Dilks v. Flohr Chevrolet, supra*, pp. 433, 434, 192 A.2d 682, p. 687); (c) "each party is a free

tion which has caused manifest and palpable injury to the complaining party: *See Richter v. Mozenter*, 356 Pa. 650, 654, 53 A.2d 76." *Gagliardi v. Lynn*, 446 Pa. 144, 151, 285 A.2d 109, 112 (1971), quoting *Templeton Appeal*, 399 Pa. 10, 16, 159 A.2d 725 (1960) quoting from *Coppage v. Smith*, 381 Pa. 400, 404, 113 A.2d 247 (1955). No such showing has been made here.

2. The clause provides:

Member acknowledges that Body Shop Health Spa has neither made claims as to medical results nor suggested medical treatment to Member. It is expressly agreed that all exercises and use of all facilities shall be undertaken by Member at Member's sole risk and Body Shop Health Spa shall not be liable for any claims, demands, injuries, damages, actions or causes of action whatsoever, to person or property, arising out of or connected with the use of any of the services or facilities of Body Shop Health Spa or the premises where the same are located, including those arising from acts of active or passive negligence on the part of Body Shop Health Spa, its servants, agents or employees and Member does hereby expressly forever release and discharge Body Shop Health Spa from all such claims, demands, injuries, damages, actions or causes of action.

bargaining agent" and the clause is not in effect "a mere contract of adhesion, whereby [one party] simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely." (*Galligan v. Arovitch*, 421 Pa. 301, 304, 219 A.2d 463, 465 (1966)).

*Employers Liab. Assur. Corp. v. Greenville Business Men's Ass'n.*, 423 Pa. 288, 291–292, 224 A.2d 620, 622-623 (1966).

In *Phillips Home Furnishings, Inc. v. Continental Bank*, 231 Pa.Super. 174, 331 A.2d 840 (1974), *rev'd on other grounds* (issue of exculpatory clause held not properly before Superior Court) 467 Pa. 43, 354 A.2d 542 (1976), we enumerated situations where courts have found contracts against liability contrary to public policy:

[I]n the employer-employee relationship, *e. g., Tarbell v. Rutland R. Co.*, 73 Vt. 347, 51 A. 6 (1901); in situations where one party is charged with a duty of public service, *e. g., Denver Consol. Elec. Co. v. Lawrence*, 31 Colo. 301, 73 P. 39 (1903), *Bowman & Bull Co. v. Postal Telegraph-Cable Co.*, 290 Ill. 155, 124 N.E. 851 (1919), *cert. denied*, 251 U.S. 562, 40 S.Ct. 342, 64 L.Ed. 415 (1920) (public utilities); *Boston & Maine R. Co. v. Piper*, 246 U.S. 439, 38 S.Ct. 354, 62 L.Ed. 820 (1918), *Turek v. Pa. R. R. Co.*, 361 Pa. 512, 64 A.2d 779 (1949) (common carriers); *Dixilyn Drilling Corp. v. Crescent Towing & Salvage Co.*, 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78 (1963); *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955) (carriers); *Tunkl v. Regents of U. of Calif.*, 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963) (hospitals); *Northwest Airlines, Inc. v. Alaska Airlines, Inc.*, 351 F.2d 253 (9th Cir. 1965), *cert. denied*, 383 U.S. 936, 86 S.Ct. 1068, 15 L.Ed.2d 853 (1966) (airports); to agreements which attempt to exculpate one from liability for the violation of a statute or regulation designed to protect human life, *Boyd v. Smith*, 372 Pa. 306, 94 A.2d 44 (1953); *Warren City Lines, Inc. v. United Refining Co.*, 220 Pa.Super. 308, 287 A.2d 149 (1971); and elsewhere, *e. g.*, Uniform Commercial Code § 2–719(3), 12A P.S. § 2–719,

provides that the limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable. *See generally* Restatement (Second) of Torts, § 496 B, comments a–j (1965); Restatement of Contracts, § 575 (1932); W. Prosser, The Law of Torts, § 68, at 442–45 (4th ed. 1971).

*Id.*

Courts have been particularly sensitive to the public interest in considering contracts that involve health and safety. In *Boyd v. Smith, supra,* a landlord contended that an exculpatory clause in the lease relieved him from liability for personal injuries sustained by plaintiff in a fire. The injuries resulted from the landlord's negligence in failing to provide a wire or chain or fire escape as required by a statute. In rejecting the landlord's contention the Court stated:

Defendant relies, as previously indicated, on the exculpatory clause of the lease relieving him from liability for injury or damage caused by fire even though such injury or damage might result from his own negligence. Such a protective clause is undoubtedly valid and enforceable if it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or the State but merely an agreement between persons relating entirely to their private affairs. *Cannon v. Bresch,* 307 Pa. 31, 160 A. 595; *Jacob Siegal Co. v. Philadelphia Record Co.,* 348 Pa. 245, 35 A.2d 408; *Manius v. Housing Authority of the City of Pittsburgh,* 350 Pa. 512, 39 A.2d 614; *Wright v. Sterling Land Co., Inc.,* 157 Pa.Super. 625, 43 A.2d 614. The situation becomes an entirely different one in the eye of the law when the legislation in question is, as here, a police measure obviously intended for the protection of human life; in such event public policy does not permit an individual to waive the protection which the statute is designed to afford him. It was said in *McCurdy's Estate,* 303 Pa. 453, 461, 154 A. 707, 709: "Statutes grounded on public policy are those which forbid acts having a tendency to be injurious to the public good. The prime question is whether the thing forbidden is inimical to the public

interest. Where public policy requires the observance of a statute, it cannot be waived by an individual or denied effect by courts, since the integrity of the rule expressed by the Legislature is necessary for the common welfare." *Id.* 372 Pa. at 309–310, 94 A.2d at 46.

Here the contract clearly concerned health and safety. The allegation is that a business purporting to provide for the physical health of its members acted directly contrary to a doctor's orders specifying necessary post-operative treatment, and that serious injuries resulted. The public has an interest in assuring that those claiming to be qualified to follow a doctor's orders are in fact so qualified, and accept responsibility for their actions.

This interest is manifested by the Physical Therapy Practice Act, Act of October 10, 1975, P.L. 383, No. 110, § 1, 63 P.S. § 1301 *et seq.,* which provides for the examination and licensing of physical therapists. The Act provides: "Any person licensed under this act as a physical therapist shall not treat human ailments by physical therapy or otherwise except by the referral of a person licensed in this State as a physician . . ." 63 P.S. 1309. This provision reflects the legislature's recognition that a physical therapist is in a sense part of the medical profession; the therapist's expertise lies in the same realm as the doctor's, and the therapist's errors may do as much harm as the doctor's.[3] The therapist's status is comparable to that of a druggist, about whom it has been said:

It is settled that a druggist or manufacturer of drugs or medicines who negligently delivers a deleterious drug when a harmless one is called for is responsible for the harmful consequences to the user of that drug or medicine as being guilty of a breach of duty imposed on him by law to avoid acts dangerous to the lives or health of others.

**3.** It should be noted that the Physical Therapy Practice Act provides that it is "not intended to limit the activities of persons legitimately engaged in the nontherapeutic administration of baths, massage, and normal exercise." 63 P.S. 1304. It is possible that the Spa might fall within this category, but whether that is so cannot be decided on the pleadings.

*Henderson v. National Drug Company,* 343 Pa. 601–605, 23 A.2d 743, 746 (1942).

A physical therapist who as alleged here negligently performs therapy in direct contradiction to a doctor's orders should likewise be "guilty of a breach of duty imposed on him by law to avoid acts dangerous to the lives or health of others."

The Leidys should further have the opportunity to address the third requirement that must be met before an exculpatory clause will be upheld, namely, that " 'each party is a free bargaining agent' and the clause is not in effect 'a mere contract of adhesion, whereby [one party] simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely.' " *Employers Liab. Assur. Corp. v. Greenville Business,* 423 Pa. at 291–292, 224 A.2d at 623, quoting *Galligan v. Arovitch,* 421 Pa. 301, 304, 219 A.2d 463 (1966).[4] Here Mrs. Leidy was told by her doctor that the Spa would provide the necessary post-operative treatment; it is not surprising that she agreed and signed the Spa's printed form, in which the exculpatory clause appears in fine print. It is at least questionable whether Mrs. Leidy was aware of the clause, and whether she had any "alternative other than to reject the transaction entirely."

## II

The lower court stated in its opinion:

In the present case, nothing has been presented suggesting that the operation of a health spa involves matters of public policy. The agreement itself relates only to matters of interest to the parties to the agreement.

This statement was at least premature. As already discussed, the agreement does not relate only to matters of private interest. So far as "nothing [having been] present-

4. The Leidys did not specifically raise this issue in their pleadings. They did, however, allege the general invalidity of the clause as unconscionable. The scope to be given this allegation is discussed below.

ed," it must be remembered that the motion here was under Pa.R.Civ.P. 1034 for judgment on the pleadings, and not under Pa.R.Civ.P. 1035 for summary judgment. In passing on a motion for summary judgment a court may consider affidavits and depositions, but in passing on a motion for judgment on the pleadings it may only consider the pleadings themselves. *Phillippe et vir. v. Rhoads,* 233 Pa.Super. 503, at 511, 336 A.2d 374, at 377 (dissenting opinion). *See Hammermill Paper Co. v. Rust Engineering Co.,* 430 Pa. 365, 243 A.2d 389 (1968).

On the pleadings themselves, the Leidys have alleged that the exculpatory clause was unconscionable. This was sufficient to "suggest [ ] that the operation of [the Spa] involves matters of public policy." It is well settled that a motion for judgment on the pleadings can only be granted where the moving party's right to prevail is so certain that it is clear that a trial would be a fruitless exercise. *Phillippe et vir. v. Jerome H. Rhoads, Inc., supra* (dissenting opinion, citing *Karns v. Tony Fireworks Corp.,* 436 Pa. 181, 259 A.2d 687 (1969)); *Bata v. Central-Penn National Bank of Philadelphia,* 423 Pa. 373, 224 A.2d 174 (1966); *Bureau for Child Care v. The United Fund of the Philadelphia Area,* 416 Pa. 617, 207 A.2d 847 (1965).

In *Phillippe et vir. v. Jerome H. Rhoads, Inc., supra,* the plaintiff sued for damages caused by gasoline explosions, contending that the explosions were caused by the defendant's negligent construction and installation of fuel storage tanks. The defendant by new matter pleaded an indemnity provision of the contract, and obtained a judgment on the pleadings on that basis. In his dissent from the majority's affirmance, Judge Hoffman stated:

In the present case, appellee's new matter averred that the contract contained an indemnity clause, which, *if valid,* would be a complete defense to appellants' suit. The existence of the indemnity clause is obviously a factual averment requiring a response: " 'New matter' pleading is designed to compel a plaintiff to answer the defendant's affirmative defenses during the pleading stage to avoid an unnecessary trial. If the plaintiff answers inade-

quately, a motion for judgment on the pleadings may be filed." *Chivers v. School District of Mt. Lebanon,* 6 Pa. Cmwlth. 622, 625, 297 A.2d 187, 189 (1972), quoting Goodrich-Amram, Standard Pennsylvania Practice (1972 Supplement), § 1030–1 at 308. Thus, had appellants failed to reply to appellee's new matter, the lower court's ruling would have been proper because a lawful indemnity clause would be a complete defense and the pleadings would not have indicated any dispute as to its validity. But appellants specifically denied that the indemnity clause was controlling. At this juncture, therefore, it cannot be said that appellants have failed to state a claim upon which relief can be granted: * * * It is difficult to see how the court concluded that appellants failed to state a claim upon which they could *possibly* prevail at trial. Thus, the lower court erred in granting appellee's motion.

*Phillippe, supra,* 233 Pa.Super. at 509–510, 336 A.2d at 377.

Here we are presented with a comparable situation.[5] The Spa's new matter pleaded that the contract contained an exculpatory clause, which if valid, would be a complete defense to the suit. The Leidys' reply specifically denied the validity of the clause, asserting that it was unconscionable. This denial should have precluded the entry of judgment on the pleadings.

The Leidys' appeal is sustained, Ms. Robinson's is denied, and the case is remanded for further proceedings.

PRICE, J., files a dissenting opinion in which WATKINS, P. J., and VAN der VOORT, J., join.

PRICE, Judge, dissenting:

I would affirm the lower court's grant of judgment on the pleadings in favor of Deseret Enterprises, Inc., d/b/a Body Shop Health Spa (Deseret). I would also affirm the lower court's decision denying the request of Kathy Ann Robinson, a spa employee, for judgment on the pleadings.

5. *See Dilks v. Flohr Chevrolet,* 411 Pa. 425, 435 n. 11, 192 A.2d 682, 687 n. 11, (1963), in regard to the applicability of decisions dealing with indemnity clauses to those dealing with exculpatory clauses.

Although this case presents unfortunate circumstances for the Leidys, I feel that the exculpatory clause of the membership agreement, which Mrs. Leidy signed, precludes any recovery for alleged negligent treatment at defendant health spa.

Judgment on the pleadings, under Pa.R.C.P. No. 1034, "may be granted in cases which are so free from doubt that a trial would clearly be a fruitless exercise." *Bath v. Central-Penn National Bank of Philadelphia,* 423 Pa. 373, 378, 224 A.2d 174, 178 (1966). After a careful review of the pleadings, I feel that the instant case presents such a situation.

No material facts are in issue. Mrs. Leidy went to Deseret on her doctor's advice. It is established that the physician recommended a specific exercise program for Mrs. Leidy. In order to participate in Deseret's program, Mrs. Leidy signed a membership agreement, a copy of which was attached to the complaint. Mrs. Leidy suffered physical injury and discomfort due to Deseret's alleged negligent conduct.

In answer to the Leidy's complaint in trespass and assumpsit, Deseret asserted that Mrs. Leidy, by way of the membership agreement, had: (1) acknowledged that Deseret made no medical recommendations to her; (2) waived any claims or damages that might arise from use of Deseret's facilities and services; (3) released Deseret from all actions that might arise from negligent acts during treatment.[1] The Leidys replied that Mrs. Leidy could not anticipate improper treatment by Deseret. In addition, they averred that the "terms of waiver, discharge or release . . . are unconscionable, made without consideration, made for the benefit of Defendant on the form prepared by Defendant and are an unlawful anticipatory attempt by Defendant to relieve itself from its own negligence and from breach of its own contract."

1. These statements simply paraphrase the content of the exculpatory clause of the agreement.

Although contracts limiting liability for negligence are not favored by the law, *Crew v. Bradstreet Co.*, 134 Pa. 161, 19 A. 500 (1890), they have been held valid and enforceable by our courts. The criteria for determining such a clause valid are: (1) it must not contravene public policy; (2) it must be a contract between persons relating exclusively to their private affairs; (3) each party must be a free bargaining agent, not simply one adhering to a contract which he is powerless to alter, with no other alternative than to reject the transaction completely. *Employers Liability Assur. Corp. v. Greenville Business Men's Assn.*, 423 Pa. 288, 291–92, 224 A.2d 620, 622–23 (1966). The Leidys have not at any time denied the validity of the exculpatory clause by asserting nonconformance with the criteria set forth.

This case presents a situation similar to that confronted by the Pennsylvania Supreme Court in *Keil v. Good*, 467 Pa. 317, 356 A.2d 768 (1976). In *Keil*, the plaintiffs requested specific performance of an oral contract for the sale of land. The defendants filed a counterclaim and new matter, which contained an averment that the complaint should be dismissed due to the statute of frauds. Subsequently, the defendants filed a motion for judgment on the pleadings. The court noted that the plaintiffs would have to respond to new matter to avoid judgment on the pleadings. If the plaintiffs responded to the statute of frauds averment, however, entry of judgment on the pleadings could still occur.

> "Whether or not such a result is required will depend upon the factual allegations contained in plaintiff's complaint and in plaintiff's answer to defendant's 'new matter.' If in their complaint, or in their answer to defendant's 'new matter,' plaintiffs allege no facts which, if proven, would take the alleged oral contract for the sale of real estate outside the bar of the Statute of Frauds, then clearly a trial would be a 'fruitless exercise,' and entry of judgment on the pleadings in favor of defendant would be proper."

*Keil v. Good, supra* 467 Pa. at 322, 356 A.2d at 771. The court vacated the judgment entered by the court below because the plaintiffs had alleged that the defendants exe-

cuted a deed to the property. The defendants denied execution of the deed, thereby framing a factual issue. Ultimately, the statute of frauds defense could be negated; therefore, judgment on the pleadings was improper.

In this case, Deseret raised the defense of waiver in new matter, to which the Leidys replied. As in *Keil v. Good, supra,* determining whether judgment on the pleadings is proper

"will depend upon the factual allegations contained in plaintiff's complaint and in plaintiff's answer to defendant's 'new matter.' If in their complaint, or in their answer to defendant's 'new matter,' plaintiffs allege no facts which, if proven [would negate the exculpatory clause's validity], then clearly a trial would be a 'fruitless exercise,' and entry of judgment on the pleadings in favor of defendant would be proper." *Id.* 467 Pa. at 322, 356 A.2d at 771.

The majority cites *Phillippe v. J. H. Rhoads, Inc.,* 233 Pa.Super. 503, 336 A.2d 374 (1975), at great length. In that case, the majority of this court affirmed an order granting judgment on the pleadings. Again, the appellants challenged the validity of an exculpatory clause, but failed to allege any facts which would establish its unenforceability.

"While appellants aver that they were in an inferior bargaining position with this appellee, they do not allege that they could not deal with another in the business . . . . Further, appellants fail to aver that either they or appellee had not benefitted from the contract relations which had existed one with the other." *Id.* 233 Pa.Super. at 507, 336 A.2d at 376.

In this case, although the Leidys generally aver the clause's unconscionability, they do not assert that the clause contravenes public policy or that it concerns matters outside the private affairs of those contracting. They do not contend that the parties were not free bargaining agents. Plaintiffs have thus alleged no facts which challenge the validity of the clause which Deseret relies upon. Under the

*Keil* standard, judgment on the pleadings would be appropriate.

In addition, we recognized in *Phillippe* that "an agreement or instrument which reduces legal rights which would otherwise exist is strictly construed against the party asserting it and must spell out with the utmost particularity the intention of the parties." *Id.* 233 Pa.Super. at 507, 336 A.2d at 376, *quoting Galligan v. Arovitch,* 421 Pa. 301, 303, 219 A.2d 463, 465 (1966). There, as here, even reading the clause in the light most favorable to the appellants Leidy, the language is not ambiguous. I would therefore affirm judgment on the pleadings in Deseret's favor.

Turning to Ms. Robinson's appeal from the lower court's denial of judgment on the pleadings, we are faced with a unique question—whether an exculpatory clause entered into by the employer, Deseret, may be relied upon by the employee in a negligence action. Because the majority found the case not to be appropriate for judgment on the pleadings, it did not consider the merits of the Leidys' claim that the clause, if valid on the face of the pleadings, does not inure to Ms. Robinson's benefit. Although I have uncovered no Pennsylvania case directly on point, it is my view that if Ms. Robinson was acting within the scope of her employment, the contract should be read to protect her from liability also. A general proposition is stated in 53 Am. Jur.2d *Master and Servant,* § 408 (1970):

"[W]here a valid agreement is entered into between an employer and a third person, exculpating the employer from liability to such third person for negligence, an employee is ordinarily entitled to the same exculpation as his employer, even though he is not expressly named as a beneficiary of such exculpation."

The Restatement (Second) of Agency § 347 (1958) similarly provides:

"(2) Where, because of his relation to a third person, a master owes no duty, or a diminished duty, of care, a servant in the performance of his master's work owes no greater duty, unless there has been reliance by the master

or by a third person upon a greater undertaking by the servant."

If the employee is acting within the scope of his employment, thereby carrying out the performance of services for which the customer has contracted not to hold the employer liable for negligence, the only reasonable corollary is that the employee—agent is likewise excused. Contrariwise, if the employee is acting outside the scope of employment, she cannot rely on the contract provision's exculpation of the employer. As the employee would not then be serving the customer as the employer's agent, the employee could not defend on the basis of that agency. Further, because the clause does not exculpate Ms. Robinson individually from liability for negligence and because the provision must be strictly construed, by acting outside the scope of her employment, Ms. Robinson would be precluded from relying on the contract provision altogether. The open question of whether Ms. Robinson was or was not acting within the scope of her employment is thus crucial to a determination of her liability for alleged negligence. I would therefore affirm the lower court's denial of Ms. Robinson's request for judgment on the pleadings.

WATKINS, President Judge, and VAN der VOORT, J., join in this opinion.