## Curley v. Lisman (No. 2)

*Charles R. Coslett*, for plaintiff.
*Joseph P. Giovannini, Jr.*, for defendant.
*Frank G. Harrison*, for additional defendant.

PODCASY, *J.*, June 23, 1981—On January 4, 1980 Mary Ellen Keating, a reporter for WILK, a local radio and television station, interviewed Walter W. Lisman, the then Mayor of Wilkes-Barre. The interview was taped for a later radio broadcast to be conducted by Kevin Jordan, the WILK news director. During the course of the interview, Mayor Lisman stated that, "I think, uh, Pat Curley was made out to be a liar when he said that I had tipped Francis Hannon about his impending arrest."

Jordan subsequently reviewed the tape and found the Lisman statement to be "newsworthy" because of its reference to Curley, the police detective and prosecutor principally involved in the infamous Hannon murder case, and to Hannon, defendant therein. The Lisman statement was

therefore incorporated in two WILK radio newscasts on January 4, 1980, and in a subsequent "Special Assignment" radio broadcast on January 7, 1980. Curley took offense to these broadcasts and thereafter filed the present proceedings in trespass against Lisman, claiming that Lisman had defamed his character by falsely stating that he had charged Lisman with tipping off Hannon that Hannon was about to be arrested. Preliminary objections interposed by Lisman were subsequently dismissed, whereupon Lisman filed an answer to the Curley complaint, incorporating therein certain new matter to which Curley later filed a reply, and in addition filed a complaint against WILK, joining WILK as an additional defendant in the action.

The substance of the Lisman complaint against WILK is that, inasmuch as WILK had the opportunity to review the tape of the Lisman interview prior to broadcast and to thereby control its use, WILK should be held solely, jointly, or severally liable to Curley and/or liable over to Lisman.

WILK has filed an answer to the original Curley complaint, averring in new matter therein that the radio broadcasts were privileged under the First Amendment of the United States Constitution, that Curley was a "public figure," and that WILK had broadcast the Lisman statement not out of malice toward Curley, but simply in reliance on Lisman's good reputation for the accuracy of his taped statement. Lisman, in turn, has filed a reply to WILK's new matter alleging, inter alia, that WILK knew or should have known that the Lisman statement might be untrue, that because of its control of the tape it had the opportunity and duty to investigate the truth of the statement prior to its

use, and that, having failed to make such an investigation, it could not effectively claim the protection of the First Amendment guarantee of freedom of speech.

After the pleadings were closed, the depositions of Kevin Jordan, Mary Ellen Keating, and Walter W. Lisman were taken. The first two are now part of the record, and the third is to be filed. WILK, the additional defendant, has interposed alternative motions for judgment on the pleadings or summary judgment on the entire record, and we now have before us disposition of these motions. In our opinion, both motions must be denied.

It is settled law that the United States Constitution's First Amendment guarantee of freedom of speech applies to the states as well as to the Federal government by virtue of the Fourteenth Amendment: Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Because of this guarantee of freedom of speech, it has been held by the United States Supreme Court that a "public figure" cannot recover damages for an alleged defamatory statement absent proof that the statement was made with "actual malice." Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed. 2d 1094 (1967), citing New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed. 2d 686 (1964). A "public figure" has been defined as one who has assumed a role of especial prominence in the affairs of society, occupying a position of such persuasive power and influence as to be deemed a public figure for all purposes, or, on a narrower scale, one who has thrust himself or herself to the forefront of particular public controversies in order to influence the resolution of the issues involved: Wolston v. Reader's Digest Assn., Inc., 443 U.S. 157, 99 S.Ct.

2701, 61 L.Ed. 2d 450 (1979), citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed. 2d 789 (1974). Such "public figures" are allowed recovery for defamation of character only upon proof of "actual malice" because they usually enjoy such easy access to the media that they readily have the opportunity to defend themselves and, more importantly, because they have voluntarily exposed themselves to public scrutiny and to the consequent increased risk of being subjected to defamation.

"Actual malice," as defined in New York Times Co. v. Sullivan, supra, at p. 280, consists of publishing a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." If we find that the pleadings establish as a matter of law that Curley was a "public figure" and that there is no "actual malice" on the part of WILK, we must grant WILK's motion for judgment on the pleadings. If we are unable to make such findings on the pleadings alone, but do make such findings on the entire record, we must grant WILK's motion for summary judgment. If we are unable to make such findings on either the pleadings or the entire record, we must refuse both WILK motions. This final course is the one which, in our judgment, we must follow.

For a motion for judgment on the pleadings to be granted, the moving party's right to prevail must be so certain as to make trial a fruitless exercise: Leidy v. Deseret Enterprises, Inc., 252 Pa. Superior Ct. 162, 381 A. 2d 164 (1977). As in ruling on a demurrer, all inferences must be resolved favorably to the party against whom the motion is directed: Pa. Gas & Water Co. v. Kassab, 14 Pa. Commonwealth Ct. 564, 322 A. 2d 775 (1974). On the issue whether

Curley was a "public figure" WILK has averred as new matter in its answer to Lisman's complaint, and Lisman has admitted in his reply to such new matter, that Curley was a detective on the Wilkes-Barre City police force at all times material to the cause of action, that in the course of his official duties he was prosecutor in the Hannon murder case which was attracting considerable media attention at the time, that he was a witness at certain public hearings held by the Wilkes-Barre City Council to inquire into the police department matters, which said hearings were broadcast live on radio, thus attracting considerable media attention, and that he was an unsuccessful mayoral candidate in the 1979 primary election. In addition to admitting these factual averments, Lisman admitted WILK's conclusion that these facts constituted Curley a "public figure." This latter admission is, of course, not conclusive, for the determination whether plaintiff is a "public figure" is a question of law for the court in any case in which the facts relating to that issue are not in dispute: Steaks Unlimited, Inc. v. Deaner, 468 F.Supp. 779 (W.D. Pa. 1979); Srednick v. Sylak, 343 Pa. 486, 23 A. 2d 333 (1941).

Additional defendant concedes that the fact that Curley was a detective, the prosecutor in the Hannon case, and a witness in the city council hearings is not sufficient to establish him as a "public figure." It is strongly urged upon us, however, that by running as an unsuccessful candidate for mayor in the 1979 Democratic primary, Curley "thrust himself to the forefront of particular public controversies in order to influence the resolution of the issues involved" and thereby conclusively emerged as a "public figure." We disagree. Candidates of all

kinds appear in primaries. Some take an active position in the forefront of public controversies, while some run simply on their status as family men and/or highly decorated combat veterans. Some are serious candidates, whereas some merely like to see their name on the ballot, and others use their candidacy as leverage to obtain a promise of a political job in return for their subsequent withdrawal. Some candidates attract a large following, whereas others are virtually unknown and largely ignored by the electorate. Thus, the admitted fact that Curley was a mayoral candidate in 1979 does not in itself, in our opinion, establish conclusively that he ipso facto became a "public figure." St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed. 2d 262 (1968), and Dickey v. CBS, Inc., 583 F. 2d 1221 (3d Cir. 1978), heavily relied upon by WILK, are cases in which plaintiff admitted being a "public figure," and have no bearing on the case before us, in which Curley's counsel strenuously denies that his client enjoys that status. We therefore must refuse to grant the additional defendant's motion for judgment on the pleadings.

In disposing of the additional defendant's motion for summary judgment we find no reason to alter our conclusion that it is impossible to hold, at this stage of the proceedings, that the factual situation is sufficiently clear to enable us to state as a matter of law that Curley was a "public figure" at the times relevant to a determination of that issue. Summary judgment is appropriate only where there is no genuine issue as to any material fact: Pa.R.C.P. 1035; Ritmanich v. Jonnel Enterprises, Inc., 219 Pa. Superior Ct. 198, 280 A. 2d 570 (1971); Schacter v. Albert, 212 Pa. Superior Ct. 58, 239 A. 2d 841 (1968). Consequently we must refuse to grant the

motion for summary judgment, and allow the case to proceed to trial.

We have not addressed in this opinion the question of the sufficiency of averments of "actual malice" inasmuch as it is not essential to disposition of the pending motions. To expedite matters, we suggest that, if the issue of "actual malice" must be addressed at trial, it would be the better practice to amend at that time, if need be, to conform to the proof, rather than to require amendments at this juncture. Additional defendant is, we are sure, fully aware of the nature of Lisman's contention insofar as its potential liability is concerned.

## ORDER

It is hereby ordered, adjudged and decreed as follows:

(1) Additional defendant's motion for judgment on the pleadings is denied;

(2) Additional defendant's motion for summary judgment on the entire record is denied; and

(3) The Prothonotary of Luzerne County is hereby directed to mail notice of entry of this order to all counsel of record pursuant to Pa.R.C.P. 236.