David C. LACKIE and Marion Lackie

v.

NIAGARA MACHINE AND TOOL WORKS and Port Realty and Warehousing Corp. and National Machinery Exchange, Inc.

Civ. A. No. 81–0052.

United States District Court,
E.D. Pennsylvania.

March 8, 1983.

Edward F. Silva, Philadelphia, Pa., for plaintiff.

Christopher C. Fallon, Jr., Philadelphia, Pa., for Port Realty Nat. Mach.

Francis J. Deasey, Philadelphia, Pa., for Niagara.

John T. Quinn, Philadelphia, Pa., for Cardinal Systems.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

In August, 1980, while at work and operating a shear press, plaintiff, David C. Lackie,[1] sustained injuries when his right hand became stuck in the machine. Suit was instituted approximately five months later; plaintiff alleges that defendant, National Machinery Exchange, Inc. (National) breached various obligations imposed by § 402A of the Restatement of Torts (Second). National then commenced a third-party action against plaintiff's employer, Cardinal Systems, Inc. (Cardinal), alleging generally that Cardinal had agreed to indemnify it, National, for any claim arising out of the machine's operation. Cardinal, now moving for summary judgment on the third-party complaint, argues that Pennsylvania's Workmen's Compensation Act, 77 P.S. § 1 et seq., (Act) prohibits the third-party action. We agree and grant the motion.

The relevant provision of Pennsylvania's Workmen's Compensation Act, 77 P.S. § 481(a), provides in pertinent part that the

liability of an employer under this act shall be exclusive[2] and in place of any and all other liability to such employes...

Moreover,

In the event injury or death to an employe is caused by a third party, then such employe ... may bring their action at law against such third party but the employer ... shall not be liable to a third party for damages, contribution or indemnity in any action at law ... unless

liability for such damages, contributions or indemnity shall be *expressly* provided for in a written contract ....

77 P.S. § 481(b) (emphasis added).

In the case at bar, National asserts that its sale to Cardinal of the injury-causing shear press was accompanied by an appropriately worded indemnification agreement and that Cardinal has, therefore, waived the immunity from joinder which an employer generally enjoys by virtue of the Act.

Countering, Cardinal argues that the indemnification provisions of the agreement are ambiguous and subject to more than one rational interpretation. Since National drafted the language at issue, Cardinal asseverates that the clause must be strictly construed against its author. Moreover, given this construction, Cardinal urges that it has not *expressly* waived its protection under the Act and that it is, therefore, entitled to judgment.

■ Resolution of the issue at bar requires reference to Pennsylvania law regarding the effect and construction of indemnification agreements generally as well as those under § 481(b) of the Act. In undertaking this analysis we begin with the observation that indemnification clauses are generally "not favored by the law" and are subject to a strict construction compelling an interpretation "against the party seeking their protection". *Dilks v. Flohr Chevrolet,* 411 Pa. 425, 435, 192 A.2d 682 (1963).

The specific clause at issue provides as follows:

Please note the important paragraph below: The above used equipment may or may not conform to OSHA Standards. It is the buyers [Cardinal Systems, Inc.] and their operators responsibility to operate the equipment properly and to put proper

---

1. Mr. Lackie's wife, Marion, is also a plaintiff as a result of the deprivation of the "society, companionship and [loss of] consortium" which she suffers as a result of her husband's injuries. *See,* complaint ¶ 24. For the sake of clarity and simplicity, both plaintiffs are referred to as "plaintiff" throughout this memorandum.

2. The So-called "dual capacity" issue as explored in *Kohr v. Raybestos-Manhattan, Inc.,* 522 F.Supp. 1070 (E.D.Pa.1981) (panel opinion) is not raised by the motion at bar. *See also, Tatrai v. Presbyterian University Hospital,* 497 Pa. 247, 439 A.2d 1162 (1982).

and protective guarding on the equipment in order to avoid possible injuries through its operation. It is agreed that buyers shall at their own cost and expense defend any claim or action which may have been brought by any person or firm claiming damages for personal injuries resulting from the operation of the above equipment and shall indemnify and hold the seller harmless from any such claim or resulting judgment.

The above quoted language, by its very terms, broadly purports to require Cardinal to indemnify National and hold it harmless for all claims arising out of the operation of the shear press.

In *Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc.,* 404 Pa. 53, 171 A.2d 185 (1961), the Pennsylvania Supreme Court barred an action for indemnification where the clause at issue failed to *expressly* contemplate the type of injury ultimately sustained by the injured worker. In reaching its conclusion, the court relied in part upon *Perry v. Payne,* 217 Pa. 252, 66 A. 553, which had previously construed language which purported to require indemnification from "*all* loss, cost or expense . . . *arising from accidents to* . . . laborers" as insufficient to require indemnification since no permissible "*inference from words of general import can establish*" the express assumption of potential liability. *Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc.,* 404 Pa. 53, 57, 59, 171 A.2d 185 (quotations omitted; emphasis in original).

*Potts v. Dow Chemical Co.,* 272 Pa.Super. 323, 415 A.2d 1220, 1221 (1979), applied *Pittsburgh Steel* specifically to an action where the defendant supplier sought to join plaintiff's employer as a third-party defendant. The third-party action there, as in the case at bar, was predicated upon an indemnification agreement which assertedly waived, pursuant to 77 P.S. § 481(b), the Act's protection against such a joinder. Specifically, the *Potts* indemnification clause purported to require indemnification from all liability except that "directly resulting . . . solely" from its own negligence. *Id.* The contract in *Potts* assertedly shielded the defendant/supplier from allegations of "negligence or any other cause of action". *Potts v. Dow Chemical Corp.,* 415 A.2d 1221.

Construing the indemnification language in light of the applicable provisions of the Act, 77 P.S. § 481(b), the *Potts* court emphasized that contracts for indemnification must expressly provide for "such damage" as suffered by the plaintiff. 415 A.2d at 1222. Since the language in *Potts* failed to meet this test, the court declined to give it any effect. *See also, Tookmanian v. Safe Harbor Water Corp.,* 505 F.Supp. 920 (E.D. Pa.1981).

National argues that *Pittsburgh Steel* and *Potts* should be strictly confined to their facts and that the proper method of determining the validity of indemnification clauses is made by reference to *Leidy v. Deseret Enterprises, Inc.,* 252 Pa.Super. 162, 381 A.2d 164 (1977). *Leidy,* a decision of the Pennsylvania Superior Court, did not, and indeed could not, alter the rule articulated in *Pittsburgh Steel* by the Pennsylvania Supreme Court.

*Leidy* considered an indemnity clause which favored a health spa, *i.e.,* an entity "clearly concerned" with health and safety. *Leidy v. Deseret Enterprises, Inc.,* 381 A.2d at 164 (1977). *See also,* Physical Therapy Practice Act, 63 P.S. § 1301 *et seq.* In concluding that the spa's motion for judgment on the pleadings was erroneously granted by the trial court, *Leidy* observed that four criteria generally determine whether or not an indemnification clause will be enforced. 381 A.2d at 167. Because the contract there at issue related to health and public safety, the clause was viewed as infringing upon the public interest, therefore, enforcement thereof was improper. *Leidy's* general language addressed factors for consideration when determining the validity of an indemnity clause. It did not purport to inquire into the area explored by *Pittsburgh Steel, i.e.,* the legal construction of such a clause. Simply stated, *Leidy's* broad language is useful in determining the general validity of an indemnity clause, that is, whether it violates notions of public

policy, etc. *Pittsburgh Steel's* primary application is the effect and construction given the clause. Accordingly, although the contract at bar arguably satisfies *Leidy's* requirements that the clause regulates only private conduct between parties with some degree of parity in bargaining power, that the party against whom enforcement is sought knew of the clause's existence and that enforcement would not contravene public policy, movants have nevertheless failed to satisfy the requirements of *Pittsburgh Steel* in that the clause's general language cannot support a "permissible inference" of an *express assumption* of liability. *Pittsburgh Steel Co. v. Patterson-Emerson-Comstock, Inc.,* 404 Pa. 53, 59, 171 A.2d 185.

*Phillippe v. Rhoads,* 233 Pa.Super. 503, 336 A.2d 374, 376 (1975), upon which National also relies, provides little real support for its position. It articulated the familiar rule announced in *Dilks, supra,* that an indemnity clause should be strictly construed and that any ambiguity contained therein be read against the party seeking its protection. *Phillippe* relied, in part, upon *Galligan v. Arovitch,* 421 Pa. 301, 219 A.2d 463 (1966). It, too, authorizes strict construction of indemnification clauses and requires the parties to articulate with the "utmost particularity" their intentions with regard thereto. *Id.* at 465. The indemnity clause at issue in *Phillippe* was narrowly read and its scope was limited to coverage of "only ... certain enumerated duties" to be performed in a "specified manner". *Phillippe v. Rhoads,* 336 A.2d at 376.

The indemnity clause at bar purportedly requires Cardinal to hold National harmless for damages "resulting from the *operation* of the machine*". (emphasis added.) Applicable rules of construction require that this phrase be narrowly read and that any ambiguities contained therein be construed against the phrase's author, National. The clause addresses the type of claim made by third parties against National—the obliga-

tion to indemnify is triggered by third-party claims against Cardinal which result from the machine's *operation.*

■ Plaintiff's claim against National *factually* arises out of his "operation" of the machine; his *legal* claim, however, is premised upon National's purported breach of the obligations imposed by § 402A of the Restatement of Torts (Second). Specifically, plaintiff's complaint asserts that violations of § 402A proximately caused his injuries. Plaintiff states no claim against National regarding any injury proximately caused by his *operation* of the machine. Rather, plaintiff seeks recompense for injuries caused by National's sale of a machine with a faulty design. *See,* complaint ¶¶ 12, 13 and 16. *Cf.,* Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. § 1009.-101 *et seq.* (Distinguishing between motor vehicle accidents arising out of the "maintenance or use" of a motor vehicle from those arising out of the "defective design" of the vehicle. *Id.* at § 1009.301(a).) As such, the governing rules of construction compel the conclusion that plaintiff's claim arises out of defendant's alleged violations of § 402A and not the machine's "operation", National cannot, therefore, seek refuge in the haven which the indemnity provision assertedly provides.[3] *Crummy v. Clark Equipment Co.,* No. 80–2873, slip op. at 5–8 (E.D.Pa. August 17, 1982) (Broderick, J.) We accordingly conclude that the indemnity provision at bar fails to "expressly" waive Cardinal's immunity from suit. 77 P.S. § 481.

■ National also asseverates that, in the alternative, Cardinal's passive negligence in failing to remedy a dangerous condition arguably created by it, National, compels denial of the motion. *See, Builders' Supply Co. v. McCabe,* 366 Pa. 322, 328, 77 A.2d 368 (1951) (discussing indemnity rights in the context of primary and secondary liability and types of negligence, i.e., passive and

---

**3.** National also argues that the validity of the indemnity clause presents a factual issue which, as a matter of law, obstructs summary judgment. Reference to *Potts v. Dow Chemi-*

*cal Co., supra,* which affirmed preliminary objections in the nature of a demurrer, sufficiently rebuts this assertion.

active).[4] In so arguing, National urges that consideration of primary and secondary liability and active versus passive negligence are all factual issues incapable of resolution at this stage.

This issue, simply stated, is whether, *apart from any contractual undertaking,* Pennsylvania law imposes upon Cardinal the obligation to indemnify National for liability which

> rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition . . . .

*Id.*

Clearly, Pennsylvania law neither "imputes", creates nor recognizes any "legal relationship between the parties" which could serve as a proper predicate for requiring Cardinal to indemnify National. Additionally, the Commonwealth's substantive law belies any assertion that a "positive rule of common or statutory law" supports National's position. Finally, National has failed to demonstrate the existence of any legal theory supporting its assertion that a failure by Cardinal to "discover or correct a defect" could amount to a waiver of Cardinal's immunity from suit provided by the Workmen's Compensation Act.

Specifically, 77 P.S. § 481(b) provides a "positive rule of . . . law" which prohibits joinder of the employer, Cardinal. The Pennsylvania Supreme Court, in upholding this provision of the Workmen's Compensation Act, held that § 481(b)

> creates an exception to the general right to contribution from joint tortfeasors. Under that section, a third party whose negligence is responsible, in part, for an injury suffered by an employee protected by the Workmen's Compensation Act, may not, in the suit brought by the em-

ployee against him, join the employer as an additional defendant. *Nor may the third party otherwise seek contribution or indemnity from the employer, even though the employer's own negligence may have been the primary cause of the injury.*

*Tsarnas v. Jones and Laughlin Steel Co.,* 488 Pa. 513, 412 A.2d 1094, 1096 (1980) (emphasis added). *Accord, Kohr v. Raybestos-Manhattan, Inc.,* 522 F.Supp. at 1075 (E.D.Pa.1981) (panel opinion).

It is not surprising that the general Pennsylvania rule regarding primary and secondary liability on one hand, and active versus passive negligence on the other hand, as articulated in *Builders' Supply,* finds no application in the context of this litigation which is guided by consideration of a comprehensive statute such as the Workmen's Compensation Act. *Cf. Griffith v. Wheeling-Pittsburgh Steel Corp.,* 610 F.2d 116, 129 (3d Cir.1980), *vacated,* 451 U.S. 965, 101 S.Ct. 2038, 68 L.Ed.2d 343, *on remand,* 657 F.2d 25 (3d Cir.1981) (acknowledging and failing to apply *Builders' Supply* in cases arising under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b)); *Dorward v. Consolidated Rail Corp.,* 500 F.Supp. 99, 100 (E.D.Pa. 1980) (construing *Builders' Supply* and rights of indemnification and contribution in a manner consistent with the Pennsylvania No-Fault Motor Vehicle Act, 40 P.S. § 1009.101 *et seq.* and the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*)

Accordingly, we conclude that National has no right to seek indemnification from Cardinal.

An appropriate order shall issue.

---

**4.** Judge Broderick concluded under similar circumstances that where plaintiff's complaint sounds in strict liability, rather than negligence, the employer's possession of the machine cannot serve as a basis for requiring indemnification because the employer had no control over the design or manufacturing process. Accordingly, National's reliance upon theories of passive or active negligence is misplaced. *Crummy v. Clark Equipment Co.,* No. 80–2873 slip op. at 11 (E.D.Pa. August 17, 1982).